ROXANA NEEDHAM, *Administratrix of* AMOS H. NEEDHAM, *v.* THE
GRAND TRUNK RAILWAY COMPANY.

*Damages. Survivorship of Actions. Statute. Conflict of Laws.*

Where death is caused by the wrongful act, neglect or default of another, the personal representative of the deceased under the provisions of §§ 15, 16 and 17, ch. 52, G. S., can recover damages only with reference to the pecuniary injury resulting from such death to the widow and next of kin of the deceased, and the intestate's cause of action cannot be taken into the account in assessing the damages under the provisions of said sections.

Where death thus occurs two causes of action may arise, one in favor of the decedent for his loss and suffering resulting from the injury in his lifetime, and revived by the act of 1847, (laws of 1847, p. 29, No. 42;) the other founded on his death, or on the damages resulting from his death to his widow and next of kin, under the act of 1849, (Laws of 1849, p. 7, No. 8.) Both actions are to be prosecuted in point of form in the name of his personal representative, but the damages in the two suits are given upon entirely different principles, and for different purposes.

Needham, Adm'x, v. Grand Trunk R. R. Co.

Where the injury was inflicted without this state, and the cause of action of the intestate does not survive by the laws of the state or territory where it accrued, our statute of 1847 does not apply; nor does our statute of 1849 apply where the injury which caused the death was inflicted without this state, though upon a citizen of this state who was brought here before death.

ACTION ON THE CASE. The plaintiff alleged in her declaration that on the 14th of July, 1864, the defendants were a corporation duly established by the laws of Vermont; that at that time there was a railroad extending from Portland, Maine, to Island Pond, Vermont, which the defendants used, maintained and controlled for usual railroad purposes, and which they were bound to keep in repair; that on said day the intestate, Amos H. Needham, was in the employment of the defendants as engineer, and that it was his duty to run an engine with a train of cars upon the said railroad from Gorham, N. H., to Island Pond, Vt.; that on said day he started with his engine and a train of cars and was running the same upon said railroad in a prudent manner from said Gorham to Island Pond; that the defendants neglected to keep the said railroad in repair, (specifying the defects,) about one mile easterly from the Northumberland depot, in the state of New Hampshire; that by reason of the said railroad being so negligently left out of repair, when said engine arrived at said point, without any negligence or want of care on the part of the intestate, it was unavoidably thrown from the track and overturned, and the intestate was thrown under the engine and so injured that he died on the 17th of July in consequence thereof.

The defendants demurred to the declaration. It was conceded by the counsel for both parties that the defect in the defendants' road which the plaintiff claims caused the death of the intestate, was in that part of the road which is in the town of Northumberland, in the state of New Hampshire, and that the injury which caused his death was received in said Northumberland; and that he, on the same day of the injury, was removed to his home in Vermont, and then died in two or three days. And it was agreed that the case on hearing should be treated as if the declaration was amended so as to state the facts according to said agreement.

The court, at the Essex County March Term, 1865, POLAND, Ch. J., presiding, without hearing and *pro forma* held the declaration insufficient,—to which the plaintiff excepted.

*B. H. Steele*, for the plaintiff.

I. The only point for discussion is whether our statute of survivorship applies to transitory actions *ex delicto* where the *delictum* occurs *out of the state.* Sections 10, 11 and 12, p. 391, G. S., comprise the code of Vermont on the subject of survivorship of actions and causes of action. In these no distinction is made between cases for bodily injuries where the death is occasioned by them, and cases where the death occurs before suit from other causes. Sections 15, 16 and 17 provide certain special rules for cases where the injury causes death. 1st, that felony on the part of the defendant should not bar the right of recovery. 2d, that though the right of action remains in the deceased to be prosecuted by his *legal representative,* that the proceeds should go to the benefit of the heirs instead of creditors, and 3d, a rule of damages which may be regarded as declaratory simply of the natural result of survivorship, viz : that the jury should not limit themselves to less than a consideration of the gravest direct consequences of the defendant's wrong—the death. Section 13 in a similar manner provides a rule of damages in cases of trespass on property which survive under the statute. These limitations of the damages cannot affect the question of survivorship. It is *only* by virtue of the 13th section that actions for bodily injury which do not cause death survive, and in such cases the statute prescribes no rule for damages. If any portion of the 15th, 16th and 17th sections can fairly be regarded as merely local in its application, then our right is perfect under the 13th section, which is *not* limited to injuries which do not cause death, or in any other manner. The 15th, 16th and 17th sections are limited in their application to a certain *class* of cases which survive under the 13th section, and if the case at bar can for any reason be regarded as out of the application of those sections, our recovery will be under the general provisions of the 13th section. The 12th and 13th sections were for awhile our only law upon this subject, and constitute the entire act of November 15th, 1847. See p. 29, No. 42 of Laws of 1847. The 15th, 16th and 17th sections constitute the entire act of November 7th, 1849, which does not refer to or repeal the act of 1847. See p. 7, No. 8, Laws of 1849. The law of 1847 is an addition to that chapter of revised statutes which provides that trover,

Needham, Adm'x, *v.* Grand Trunk R. R. Co.

trespass or replevin may survive, and places actions for bodily injury upon the same ground as to survivorship. The addition cannot be any more local in its application than the original statute. Our courts will not presume that a *statute* exists in New Hampshire like ours. They will presume the common law to prevail there. The existence of a statute must be alleged and proved like any other fact. Our courts have not asked for such allegations or proof in cases of trover or trespass, which survive by statute. Why should they then in this, which also survives by statute? The omission of the word "by," in the General Statutes, which occurs in the Compiled Statutes and in the law of 1847, affects nothing. It was right to omit it as surplusage. If it does have the effect claimed by the defendants no action survives for injury which does not cause death, even when the *delictum* occurs in the state. As to presumption in the matter of foreign law, see New York cases cited below.

II. The statutes of survivorship pertain simply to the remedy. They create no new right, or liability, which did not exist at common law. They simply devolve an existing vested common law right, and liability upon the administrator or executor. They remove a common law prescription or bar. They make nothing lawful which was before unlawful. They relate simply to the time within which a recovery can be had for a common law *delictum.* The survivorship of an action is, therefore, in principle, as well as by precedent, to be determined by the *lex fori.* This principle is almost the only one upon which the conflicting opinions in the reported cases in New York on this subject agree, and I have therefore concluded that it is quite beyond question. See New York cases cited below, and also: *Blanchard* v. *Russell,* 13 Mass. 10; *Pitkin* v. *Thompson,* 13 Pick. 64; *Bulger* v. *Roche,* 11 Pick. 36; *Pearsall* v. *Dwight,* 2 Mass. 84; *Byrne* v. *Crowninshield,* 17 Mass. 55; *Agnew* v. *Platt,* 15 Pick. 417; *Coffin* v. *Coffin,* 16 Pick. 323; *Medbury* v. *Hopkins,* 3 Conn. 472; Conn. 508; Story's Conflict, § 556–7, 570–2–4, 576, *et passim.*

III. The New York decisions quoted by the defendants fail to sustain their position for the following reasons: 1. Their statute is unlike ours. Laws of New York, 1847, p. 575; Laws of New York, 1849, p. 388. 2. The decisions have been very conflicting and nearly evenly balanced upon the question at issue as it arose

even under their statute.   3.   Only one decision, *Whitford* v. *Pan-ama R. R.*, 23 N. Y. 465, has been had in the court of appeals, and that by a divided court, Ch. J. COMSTOCK supported by Justice HOYT delivering the minority opinion.   4.   If we admit either the premises of the majority opinion or the conclusions of the minority opinion to be correct we are driven to the irresistible conclusion that the action survives under our statutes, even though the *delictum* occurred abroad.   The reasons given by a majority of the judges for conclud-ing that even the New York statute creates a new cause of action, are more plausible than sound.   The cases referred to will show the history of this controversy so far as it has been in court.   *Beach* v. *Steamboat Co.*, 16 Howard, 1 ; *Beach* v. *Steamboat Co.*, 18 Howard, 335 ; *Beach* v. *Steamboat Co.*, 27 Barb. 248 ; *Crowley* v. *Panama R. R.*, 30 Barb. 99 ; *Whitford* v. *Panama R. R.*, 3 Bosw. 99 ; *Whitford* v. *Panama R. R.*, 23 N. Y. 465 ; *Vanderventer* v. *N. Y. & N. H. R. R.*, 27 Barb. 245 ; *Safford* v. *Drew*, 3 Duer. 627 ; *Trigg* v. *Conway*, 1 Hemp. 711, referred to in 17 U. S. Dig., p. 15 ; *Soule* v. *N. Y. & N. H. R. R.*, 24 Conn. 575.

*Geo. N. Dale*, for the defendants.

I.   By the common law this action is extinguished by the death of the plaintiff's intestate, and by the law of New Hampshire where the accident happened, no right of action exists in the representa-tives of the person killed ; and we contend that our statute gives the plaintiff no right of action.

II.   1.   Section 15 of chapter 52 does not revive the action, be-cause the *death* is the ground of the action, and damages are to be given for the pecuniary injury resulting from it to the representa-tives, and for that only.   The case of *Whitford* v. *The Panama R. R. Co.*, 23 N. Y., p. 465, distinctly affirms that the statute creates a new cause of action, and can have no force without the territory of the state.   2.   This action is not for the injuries suffered by the plaintiff's intestate.   *Beach* v. *Bay State Steamboat Co.*, 18 Howard, 335 ; *Vanderventer* v. *N. Y. & New Haven Railroad Co.*, 27 Bar-bour, 244.

III.   Section 12, same chapter, does not revive this action.   1. Because that provides for actions which may be prosecuted *against* and not *by* the executor.   2.   Because whatever is recovered by vir

tue of this section of the statute goes into the assets in the hands of the administrator, and belongs to the creditors, but this action is manifestly for the injury occasioned by the *death*, and is prosecuted for the benefit of the widow. 3. This seems to be the intention of the statute, else, why the language, "And the act, neglect, or default is such as would, *if death had not ensued*, have entitled the party injured to maintain an action?" or " the person who would have been liable to such action *if death had not ensued?*" clearly implying that if death does ensue, in consequence of the injuries, the defendant would not be liable to the action previously existing, but to this substituted right of action. 4. If the court maintain the plaintiff on the 12th section, then in a case where the accident happened within this state, the plaintiff would be entitled to an action on each section, which would be absurd.

IV. 1. The cause of action dies with the person, and this statute cannot go out of the state to *revive* an action which it cannot so *create*. 2. The statute can have no such revival powers, except in matters relating to the rules which shall govern the plaintiff in the *pursuit* of his rights, and not in relation to the right itself. 3. The *lex fori* governs only in respect to the rules which govern the proceedings in the forum, and not the right itself. *Harrison* v. *Edwards*, 12 Vt. 652. 4. It is distinctly stated in Story on Conflict of Laws, p. 973, that where the law of the place has extinguished all rights of action, to revive them is to create new rights, and not to enforce old ones subsisting at the time of the death of this plaintiff, and in *LeRoy* v. *Crowningshield*, 2 Mason, 168, the court declare that a right cannot exist when all remedy upon it is legally extinguished, and it makes no difference whether the plaintiff be a citizen or not, in this case. *Dwight* v. *Clark*, 7 Mass. 575 ; *Wilson* v. *Appleton*, 17 Mass. 150.

V. If this action exists by statute, the declaration must be special. *Smith* v. *Woodman*, 8 Foster, 528 ; 1 Ch. Pleadings, 372 ; 1 Swift, 385 ; 2 Mass. 444.

The opinion of the court was delivered by

WILSON, J. The first question is whether a wrongful act or neglect resulting in death affords more than a single cause of action. In order to determine this question it becomes necessary to examine

the provisions of our statutes on the subject of survivorship of actions and causes of action. Section 10 of chapter fifty-two of our General Statutes, provides that "in addition to the actions which survive at common law, the following shall survive and may be commenced and prosecuted by the executor or administrator," that is to say, ejectment, "replevin and trover, and actions of trespass and trespass on the case for damages done to real or personal estate." Section 11 provides that "if, in any proper action now pending, or which may hereafter be commenced, for the recovery of damages for any bodily hurt or injury, occasioned to the plaintiff by the act or default of the defendant or defendants, either party shall decease during the pendency of such action, such action shall nevertheless survive, and may be prosecuted by or against the executor or administrator of such deceased party." Section 11 relates to actions pending at the decease of the party, but section 12 provides that "the causes of action mentioned in the two preceding sections (10 and 11) when the same shall arise hereafter, shall survive, and the actions may be commenced and prosecuted, or when commenced in the lifetime of the deceased, may be prosecuted against the executor or administrator, where by law that mode of prosecuting is authorized." It was claimed by the defendant's counsel on the agreement of the case that the 12th section only provides for actions which may be prosecuted against and not *by* the executor or administrator. But it will be noticed that the first clause of section 12 to and including the word "prosecuted" in the third line, declares what causes of action shall survive, namely, the causes of action mentioned in the two preceding sections, among which are causes of action for bodily hurt or injury. In section 11 we find the words "may be prosecuted to final judgment *by* or against the executor or administrator of such deceased person." It would seem that the word *by* was inadvertently omitted in the 12th section, but it is obvious that the legislature intended to provide for the prosecution of actions and causes of action *by* as well as against the administrator, and we think the act plainly expresses such intent. To hold to the contrary would render that part of the section which declares that the cause of action shall survive wholly inoperative, except in cases where the cause of action could be prosecuted against the executor or administrator. The 13th

section provides a rule of damages in cases of trespass on property which survive under the statute. Sections 12 and 13 were for awhile our only law upon this subject, and constitute the entire act of November 15th, 1847. That act provides that causes of action for bodily injury shall survive, but the right of recovery, under its provisions, is in effect limited to such damages as the injured party could have recovered if he had survived his injuries. Its provisions are, primarily, for the benefit of the creditors of the deceased, and seldom afford any substantial aid to his widow or children.

In view of the numerous deaths resulting from wrongful acts and neglects, committed and suffered, and of the consequent deprivation suffered by the wife and children, or other relatives, of their natural support and protection, for which injury neither the common law, nor existing statutes had provided a remedy, our legislature in 1849 passed the act which constitutes the 15th, 16th and 17th sections of chapter fifty-two of our General Statutes. Section 15 provides that, " whenever the death of a person shall hereafter be caused by the wrongful act, neglect or default of any person, either natural or artificial, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person or corporation who would have been liable to such action if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as shall amount in law to a felony." This section defines the kind and degree of negligence with which the defendant must be chargeable in order to subject him to the action. It must be such as would, if death had not ensued, have entitled the party injured to maintain an action. Section 16 provides that "every such action shall be brought in the name of the personal representative of such deceased person, and the amount recovered in such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, who shall receive the same proportions as provided by law for the distribution of the personal estate of persons dying intestate." The 17th section provides that in every such action as hereinbefore provided (referring to sections 15 and 16) "the court or jury before whom the issue shall

be tried, may give such damages as they may deem just, with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person." In an action brought by a person injured, by the wrongful act or neglect of another, he recovers for his pecuniary loss, and in addition for his pain and suffering. In such cases all the consequences to him of the wrong may have been experienced at the time of the trial, or they may be, to a very great extent, prospective. The damages are to be ascertained from the nature of the injury, and entire compensation, both for the consequences of the injury already experienced by him, and for the consequences which the court or jury are satisfied the injured party will experience from the wrong, must be awarded by a single verdict. He has but a single cause of action resulting from such injury to himself and can have but one satisfaction for the same. The damages must be awarded solely with reference to his cause of action, namely, his loss and suffering, and without reference to the pecuniary injury which might result to his estate after his decease. In case of the death of the injured party from other causes, before obtaining satisfaction for the injury, (if the injury occurred within this state,) his cause of action, though at common law extinguished by his death, is revived by the provisions of section 12 of said statute in favor of the executor or administrator. In such action by the executor or administrator, his recovery of damages is limited to his intestate's cause of action, and to his intestate's right of recovery in his life time, and the damages must be assessed with reference to the consequences of the injury to his property and with reference to his pain and suffering from the time the injury was inflicted to the time of his recovery from the same. It is insisted by the defendants' counsel that when death occurs in consequence of the injury, the statute takes away the intestate's right of action which existed at the time of his death and creates a new action for the death, and substitutes it for such previously existing right, and that it could not have been the intention of the legislature to have allowed the administrator to maintain an action for the benefit of the estate, and the widow or next of kin to maintain another for their benefit. In order to determine how far this conclusion should be admitted, some further notice of the statutes becomes necessary. In the acts previous to 1849 no

distinction is made between cases of bodily injuries where the death is occasioned by them, and cases where the .death occurs before suit from other causes. The act of 1849 contains no reference to any previous statute. When the death occurs in consequence of the injury, the loss and suffering of the injured person occasioned by the injury cease at his death. His cause of action in such case embraces his loss and suffering from the time the injury was inflicted till the moment of his dissolution, and the damages *as to the* intestate must stop · with the period of his existence. *Baker* v. *Bolton,* 1 Camp N. P. 493.

The principles on which the intestate's cause of action rested at common law, are the same irrespective of the cause of his death. He had a right of action for the injury, and that right existed till his death. At common law his right of action died with his person, but is revived by the statute in favor of his administrator. The action by the administrator founded on the claim of his intestate under the provisions of section 12 could include nothing more than his intestate's cause of action. That section simply revives but does not enlarge the common law right of the intestate. Under the provisions of that section it is evident that no damages could be assessed by reason of his death, nor resulting from his death. The sum recovered by the administrator in an action founded exclusively upon the claim of his intestate, under the provisions of the 12th section, would be treated as assets in the hands of the administrator for distribution among the creditors and heirs of the intestate, agreeably to the general provisions of our statute. It is urged that if the intestate's cause of action is revived, when death occurs in consequence of the injury, it constitutes no distinct cause of action, but is devolved upon his personal representative under the provisions of the 15th section, and forms part of the ground of recovery under the provisions of the latter section for the exclusive benefit of the widow and next of kin. It will be evident, we think, that such conclusion is not warranted by the provisions of the statute, nor could it be sustained on principle. In the first place the act of 1849 (sections 15, 16 and 17 of chapter fifty-two of the General Statutes) *does not* profess to revive the intestate's cause of action. The intestate's cause of action is revived by the provisions of the act of 1847. It

would not be reasonable to suppose that the legislature intended, without reference to the extent of the intestate's claim and cause of action, without reference to the legal or equitable claims of his creditors, without reference to the extent of the injury resulting from his death to his wife or other relatives, and without reference to the number and situation of his relatives, whether near or remote, to include the intestate's cause of action in a recovery under the provisions of the 15th section for the exclusive benefit of the widow and next of kin. The intent of the 15th, 16th and 17th sections was to make the damage, or pecuniary injury resulting from such death to the widow and next of kin, the subject of a new cause of action and right of recovery, wholly distinct from the consequences of the wrong to the injured party, and wholly distinct from his claim for damages resulting from such injury. The provisions of the last mentioned sections have introduced principles wholly unknown to the common law, or to any previous statute of this state; namely, that the value of a man's life to his wife and next of kin, constitutes a part of his estate to be administered by his personal representative, and that the whole proceeds of the recovery for such loss shall go to his widow or surviving relatives. Notwithstanding the action in such case is to be prosecuted in point of form by the executor or administrator, he is only a trustee of the sum recovered for the use of the widow and next of kin, and the sum so recovered cannot be treated as assets in his hands for distribution among the creditors. No right of action, under the provisions of section 15, exists during the lifetime of the injured party. When death occurs from the injury, the right of action given under the provisions of that section arises after and at the moment of his decease. The damages resulting from his death are then prospective. Such damages to the widow and next of kin begin where the damages to the intestate ended, viz: with his death. The 17th section provides that the action must be commenced within two years from the decease of the injured party. The same section provides that the damages must be assessed " with reference to the pecuniary injury resulting from such death to the widow and next of kin of such deceased person." It is evident that the amount of damages recoverable in such cases must depend upon the circumstances of each case. The number of persons dependent upon such deceased

person for support and protection, consequently injured by his death, the degree of the kindred mentioned in the statute, and the extent of their dependence and the ability of the deceased if he had survived his injuries to have provided for his family and next of kin, would be important considerations in assessing the damages resulting from such death to his wife and next of kin. We think the question well settled by authority and upon principle that where death is caused by the wrongful act or neglect of another, the personal representative of the deceased, under the provisions of sections 15, 16 and 17 can recover damages only with reference to the pecuniary injury resulting from such death to the widow and next of kin of the deceased, and that the intestate's cause of action cannot be taken into the account in assessing the damages under the provisions of said sections. *Quin* v. *Moore*, 15 N. Y. 432; *Whitford* v. *Panama R. R. Co.*, 23 N. Y. 465.

In *Blake* v. *Midland R. R. Co.*, (107 Eng. L. and Eq. 443,) COL-ERIDGE, one of the justices of the court of Queen's Bench in commenting on the British statute, (9 and 10 Victoria, ch. 93,) which is nearly like our own, says : " it will be evident that this act does not transfer this right of action (for loss and suffering of the deceased) to his representative, but gives to his representative a totally new right of action on different principles." " The measure of damages," he adds, " is not the loss or suffering of the deceased, but the injury resulting from his death to his family." We are entirely agreed that where death occurs in consequence of a bodily injury, two causes of suit or action may arise, one in favor of the decedent for his loss and suffering resulting from the injury in his lifetime, and revived by the act of 1847, the other founded on his death, or on the damages resulting from his death to his widow and next of kin under the act of 1849. Both actions are to be prosecuted in point of form in the name of his personal representative, but the damages in the two suits are given upon entirely different principles and for different purposes. We might illustrate the correctness of these positions by referring to some of the serious and unjust results which would follow from a different rule. Suppose a case of assault and battery. The injured person lingers in pain and suffering more than three years, and perhaps exhausts a large estate for his recovery. He dies from

the injury.   No suit is brought in his lifetime, and he obtains no sat-
isfaction for the wrong.   By our statutes of limitation of actions the
action for assault and battery must be commenced within three years
next after the cause of action accrued, and not after.   The cause of
action for assault and battery accrues at the time the injury is in-
flicted, consequently in the case supposed his cause of action for the
injury is barred by the statute in his lifetime.   Now if the cause of
action given by the provisions of the 15th, 16th and 17th sections is
not an original cause of action, but is nothing more nor less than his
cause of action aggravated by the circumstances of his death, and
revived by the statute, then the inquiry arises, when does the latter
cause of action accrue?   Most certainly if it is a simple devolution
of the decedent's cause of action, the right of action accrues at the
time the injury is inflicted and not at the death of the injured party ;
consequently in a case where the decedent's cause of action is, in his
lifetime, barred by the statutes of limitation, no action could be
maintained under either section of the statute.   But it would not, I
think, be gravely insisted that the legislature intended, by the act of
1849, to make the right of recovery under its provisions depend on
the question whether the decedent's cause of action was, in his life-
time, satisfied or barred by the statutes of limitation.   The 17th
section of chapter fifty-two of the General Statutes herein before re-
ferred to, provides " that every such action (the action given under
the provisions of the 15th, 16th and 17th sections) shall be com-
menced within two years from the decease of such person."   It is
evident that the legislature did not intend, by sections 15, 16 and 17
to revive the decedent's cause of action when barred by the statutes
of limitation in his lifetime.   The time limited in the 17th section
within which the action must be commenced, refers exclusively to
the action given under the provisions of sections 15, 16 and 17, and
has no reference to the decedent's cause of action.   Under the pro-
visions of these sections the cause of action accrues at the death of
the party and not before ; consequently the decedent's cause of action
might be barred by the statutes of limitation, and at the same time
there might exist a valid cause and right of recovery, under the pro-
visions of the latter sections, for the exclusive benefit of the widow
and next of kin.   Again, we may suppose that the injured person

Needham, Adm'x, v. Grand Trunk R. R. Co.

lingers in pain and suffering for two years or more and dies from the injury. He has incurred great expense in consequence of the injury and his estate is indebted for the whole sum. He leaves no property except his claim against the offender for the injury resulting from the wrongful act. He leaves no widow nor issue, his next of kin are remote, and the damages resulting from his death to them are merely nominal. Who, under such circumstances, have a just and equitable claim on the sum recovered for the loss and suffering of the decedent? If it is true in such case that there exists but a single cause of suit, and that embraces his claim as well as the claim under the latter section, then it follows that such remote kindred take the entire proceeds of such recovery. But we are not prepared to admit such conclusion. It was the money of the creditors of his estate that was expended in the efforts made for his recovery, and they have the prior and best right to his claim for damages resulting from the injury. The principle that a wrong resulting in death affords, under these statutes, two distinct causes of suit, obviates many difficulties that would arise under a different rule. We think the principle fairly deducible from the statutes, and that it is in harmony with the law applicable to analogous cases. It allows the estate to take its own, and the widow and next of kin to take the exclusive benefit of the provisions of the latter statute.

2. The only remaining question is whether our statutes apply to cases where the injury was inflicted and the cause of action accrued without the territorial limits of this state. It is conceded that the injury which caused the death of Needham was received in the state of New Hampshire, consequently his cause of action accrued in that state. By the common law, the cause of action which accrued to the intestate in that state, is extinguished by his death. By the law of that state no right exists in the personal representatives to recover for such injury, and if this action can be maintained under the provisions of the act of 1847 or 1849, it must be upon the ground that our statutes have an extra-territorial force. The fact that the intestate was a citizen of this state at the time of the injury is entirely immaterial in the decision of this question. A general or public act is an universal rule, that regards the whole community, but its operation is limited to the state by which it was enacted. Our statutes

were enacted with reference to subjects which should arise within our own state, as rules by which the rights and liabilities of our own citizens, growing out of or arising from such subjects should be determined. Our statute furnishes a remedy where the cause of action accrued without this state, and is not discharged or extinguished, but still exists by the laws of the state where it accrued. But it is not reasonable to suppose that our legislature, in the passage of the act in question, intended to provide that, in cases of wrongful acts, neglects or defaults, committed or suffered in the state of New Hampshire, or elsewhere out of the territorial limits of Vermont, the personal representative of the injured person could, on happening to find the guilty party in this state, invoke the aid of our courts and recover under our statute, especially where the cause of action does not survive by the laws of the state where it accrued. A cause of action, which by the rules of the common law is extinguished by the death of the party, is by such death fully discharged, unless the cause of action survives by force of some statute law of the state where the cause of action accrued.

In *Crowley* v. *The Panama R. R. Co.*, 30 Barb. 99, the learned judge who delivered the opinion of the court, in discussing the question whether it was the intention of the New York Legislature that their statute should have an extra territorial force says : " The purpose of the legislature in such cases should be very explicitly declared if such were the intent of our act. But if these acts follow the citizen out of the state, so as to give a right of action enforceable against any person or corporation of which the courts can get jurisdiction for wrongs done out of the state, then the acts of any other state or legislature may, upon the same principle, operate throughout the union, or throughout the civilized world, as valid law, so far as to give a right of action whenever jurisdiction of the person could be obtained. An act of the legislature of this state would thus practically become universal public law. I think this cannot be the intent or force of these acts. They are purely local and limited to the sovereignty and domain of the state and only applicable where the subject matter arose within this state."

In *Whitford* v. *The Panama R. R. Co.*, 3 Duer. 67, this question is ably and elaborately discussed by WOODRUFF, J. He says : " It

Needham, Adm'x, *v.* Grand Trunk R. R. Co.

will hardly be denied that the consequences of an act done upon the soil of New Grenada depend upon the laws of that republic. Contracts made and to be performed there are governed by those laws. An act done there which is lawful there, cannot be held illegal any where. Acts done or neglects accruing, if they are justified by the laws of that state, they are justified every where, and if these defendants are not liable there, they are not liable here, for as is said in *Campbell, Adm'r* v. *Rogers*, 19 Law R. 329, if there is no right to recover for an alleged injury in the state where it is said to have been committed, there can be none in any other state. And on the other hand if the state in which the alleged injury is committed has declared the consequences and defined the liability therefor, that law must govern. Let it be supposed that New Grenada has by law, or in the grant under which the defendants act, prescribed the cases in which the defendants should be liable for a death caused by the negligence of their servants and the extent of that liability. It would not, we think, be gravely insisted that they use their railroad under any other or greater liabilities than is so prescribed."

In *Beach* v. *Bay State Company*, 30 Barb. 433, the court had under consideration the question presented for our determination in this case. It was there held that the action, given by the New York statutes, which were substantially like our own, could not be maintained where the injury was inflicted without the state. SUTHERLAND, J., in that case says : " There is nothing in the acts of 1847 and 1849 which shows that they were intended to protect the lives of citizens while out of the state ; nothing to show that they were intended to extend to acts, neglects or 'defaults, committed or suffered in another state. It must be presumed, I think, as the result of the general principle of the territorial limit of political jurisdiction and of the force of laws before alluded to, that these statutes were intended to regulate the conduct of corporations, their agents, and of other persons whilst operating or being in this state only." If a citizen of this state leaves it and goes into another state, he is left to the protection of the laws of the latter state. In *Whitford* v. *The Panama R. R. Co.*, 23 N. Y. 465, the court held that the statute of that state, upon the subject of survivorship of actions and causes of action, does not apply where the injury was inflicted without the state.

Our statutes of survivorship of causes of action do not pertain sim-
ply to the remedy. They relate to the right or cause of action as
well as to the remedy to enforce it. In respect to the right or cause
of action, they are not retrospective in their operation. The 11th
section does not revive actions where the injured party had deceased
at the passage of the act, but it *survives* pending actions where the
injured party was still alive. The language of the 12th section is:
"The causes of action mentioned in the two preceding sections,
when the same shall arise *hereafter*, shall survive." That section
shows it was the intention of the legislature to survive causes of ac-
tion that should arise after the passage of the act and thereby save
them from the operation of the common law rule. But the legisla-
ture did not undertake to revive causes of action which were at com-
mon law already extinguished by the death of the injured person.
Story on Conflict of Laws, 973; *Leroy* v. *Crowningshield*, 2 Mason,
168. If the legislature of New Hampshire had survived the intes-
tate's cause of action, then, doubtless, our statute would have given
the plaintiff a remedy to enforce it. But there is nothing in the
language of our statute which would allow us to apply its provisions
to the intestate's cause of action. In order to bring the intestate's
cause of action within the provisions of the act of 1847, we should
be required to hold that our statute operates in New Hampshire, so
far that causes of action for bodily injury which accrue in that state,
do not die with the injured person, but survive by force of our stat-
ute. If our statute has such operation and effect there, then it re-
peals the common law rule, and renders it inoperative everywhere.
But this cannot be the intent of our statute. Its operation in
respect to the right or cause of action, is limited to matters which
occur within our own state. All transactions occurring here, and
liabilities for acts done here, are affected and governed by our local
law, but no such result follows transactions occurring in a different
state or territory where those laws are entirely inoperative, and
where different rules applicable to the subject may prevail. We
think it well settled that an action arising under a statute, and de-
pending upon no common law rule, cannot be maintained where no
such statute was in force, in the state or territory where the injury
was inflicted. The cause of action, created by the act of 1849, did

not exist under the laws of New Hampshire at the time the accident occurred, and the defendants incurred no liability under the provisions of that act.

In applying these principles and authorities to the present case we are brought to the conclusion that, where the injury was inflicted without this state, and the cause of action of the intestate does not survive by the laws of the state or territory where it accrued, our statute of 1847 does not apply; nor does our statute of 1849 apply where the injury which caused the death was inflicted without this state.

The result is the judgment of the county court is affirmed.