## SUPREME COURT.

MARY MAHLER, administratrix of JOHN MAHLER agt. THE NORWICH AND NEW YORK TRANSPORTATION COMPANY.

By giving to the *wife and next of kin* a right of action for compensation for the pecuniary injuries resulting to them from the death of the husband and relative, our statutes (1847 *and* 1849) in effect declare a right in the life of a person to exist in his wife and next of kin, and make the wrongful act, neglect or default, by which his death shall be occasioned, *tortious* as to them.

Such act, neglect or default, has no such character in the absence of the statutes, and as acts complained of as tortious must be such *at the place of commission,* an action brought under these statutes cannot be maintained if the collision and death occurred in the *open sea,* beyond the territorial limits of this state, for there our statutes have no force or effect.

Jurisdiction over *Long Island Sound,* was never acquired by treaty or grant, as it as not involved in any manner in any of the treaties by which the limits of the

province were settled, and the boundaries in the patent of King Charles Second to the Duke of York, do not include it. It has always been open as a part of the *high seas* to the use of all nations, and the state has never attempted to restrict such use, or to exercise any control over it.

*Second District Brooklyn General Term, December*, 1865. *Before* BROWN, SCRUGHAM, LOTT *and* BARNARD, *Justices.* APPEAL from judgment at special term.

By the court, SCRUGHAM, J. The plaintiff's intestate was on board the sloop Three Sisters, a vessel owned in this state, when she was on a voyage from City Island to Northport, Long Island, and was struck and sunk at a point in Long Island Sound, about three-quarters of a mile east of Execution Light, about two miles east of Sand's Point, and about one mile from the Long Island shore, by the defendants' steamboat "City of Boston." The intestate's death was caused by the collision, and the plaintiff brings this action as administratrix, to recover damages for the exclusive benefit of his widow and next of kin, alleging that the death was caused solely by the culpable negligence of the defendants or their servants.

The action is brought under the acts of 1847 and 1849. (*Laws of* 1847, *chap.* 450; *Laws of* 1849, *chap.* 256.) Before these acts, no such action could be maintained. In the case of *Whitford* agt. *The Panama Railroad Company*, it is expressly held that these statutes do not apply where the injury is not committed in this state, but in a foreign country; but it is urged that this decision rests upon the doctrine that the law of the country in which the injury was committed fixes the rights of the parties, and that it is inapplicable to this case, because if the place of the collision and death was not within the territorial limits of the state of New York, it was on the high seas, where there was no special law governing it, and, therefore, it is contended that the law of the country where the remedy is sought must be the law of the case. But in this view we cannot concur. The law of the country where the

action is brought governs only the remedy, and cannot be invoked to create a right or to make an act tortious, which was not such at the time and place of its commission. An injury to the person, resulting wholly from the culpable negligence of another, is a wrong personal to him upon whom the injury is inflicted, for it is an invasion of a right strictly personal and individual. Unless where slavery exists, no other person has any right in the subject of the injury, and no wrong can be suffered where there is no right. By giving to the wife and next of kin a right of action for compensation for the pecuniary injuries resulting to them from the death of the husband and relative, our statutes in effect declare a right in the life of a person to exist in his wife and next of kin, and make the wrongful act, neglect or default by which his death shall be occasioned, tortious as to them. Such act, neglect or default, has no such character in the absence of the statutes, and as acts complained of as tortious must be such at the place of commission, this action cannot be maintained if the collision and death occurred in the open sea, beyond the territorial limits of this state, for there our statutes have no force or effect.

It thus becomes necessary to determine whether the *locus in quo* is included within the jurisdictional boundary lines of this state. The description given in the Revised Statutes was the subject of judicial discussion in the case of *Manley* agt. *The People*, but the decision turned upon another point, and the case cannot be regarded as affording any authoritative construction of the statutory description. This description was intended to declare the boundaries of the state so far as its jurisdiction is asserted, and those boundaries, we are told by the revisers who compiled it, were " derived from grants, treaties and possession" (*Revisers' Notes, Edmonds' Statutes at Large, vol. 5, p. 256*). It is fair to assume then, when the description is at all ambiguous, that it was not intended to include any terri-

tory except that over which jurisdiction had been acquired by grant, treaty or possession. It cannot be claimed that jurisdiction over Long Island Sound was ever acquired by treaty or grant, as it was not involved in any manner in any of the treaties by which the limits of the province were settled, and the boundaries in the patent of King Charles Second to the Duke of York, do not include it (*Revisers' Notes, 5 Edmonds' Statutes at Large*, 252). It is difficult to conceive how it could be the subject of possession, but it is certain that it has always been open as a part of the high seas to the use of all nations, and that the state has never attempted to restrict such use, or to exercise any control over it. Moreover, it is apparent from the boundaries of the counties adjoining it, that the state does not claim any jurisdiction over it. The division of the state into counties is of the whole state. Such must have been the intention of the legislature in making it, and it will be found on a careful comparison of the boundaries of the state with those of the counties, that all of the border counties are made to extend to the limits of the state. The counties of Queens, Suffolk and Westchester, are not exceptions, for as it is manifest that it was intended that the counties of the state should embrace all of its territory, their boundaries being accurately given, must be considered as explaining any ambiguity in the general description of the state, and that must be so construed as to harmonize with their descriptions. This can be done without violating its language. The line from Sandy Hook to Lyon's Point, is required to be so run as to include the islands, and this can be done by following low water mark along the southern and eastern shore of Long Island to the point nearest to Gardner's Island, thence in a straight line to low water mark of Gardner's Island, thence by low water mark around Gardner's Island to the point where the line from Long Island strikes it, returning thence by that line to Long Island, thence following low water mark along the

northerly shore of East Hampton to the point nearest to Shelter Island, thence in a straight line to Shelter Island, thence following low water mark along the easterly shore of Shelter Island to the point nearest to the town of Southhold, thence in a straight line to low water mark on the southerly shore of Southhold, thence following the same easterly to the point nearest to Plumb Island, thence in a straight line to Plumb Island, thence following low water mark along the southerly side of Plumb Island to the point nearest to the Gull Islands, thence in a straight line to Great Gull Island, thence following low water mark along the southerly side of Great Gull Island to the point nearest to Little Gull Island, thence in a straight line to Little Gull Island, thence following low water mark along the southerly side of Little Gull Island to the point nearest to Fisher's Island, thence in a straight line to Fisher's Island, thence following low water mark around Fisher's Island to the straight line by which it was reached, and thence returning to Little Gull Island by the same straight line, and following low water mark on the northern side thereof to the point where it was reached by the straight line from Great Gull Island, thence returning to Great Gull Island by the said straight line, thence following low water mark along the northerly side of Great Gull Island to the point where it was reached by the straight line from Plumb Island, thence returning to Plumb Island by the said straight line and following low water mark along the northerly side of Plumb Island to the point where it was reached by the straight line from Long Island, thence returning to Long Island by said straight line, thence following low water mark along the northerly side of Long Island to the northerly boundary line of the county of New York, thence along the same to low water mark on the southerly side of Westchester county, and thence following low water mark along the southerly side of the main land of Westchester county to Lyons' Point, but always leaving the said main

land in a straight line at the point nearest to any of the islands included in the county, following low water mark around such islands, and returning by the same straight line to the main shore. The boundaries thus ascertained are those indicated by the description of the counties, and they are entirely consistent with the statutory description of the state. They show the *locus in quo* to be without the limits of the state.

The territorial limits of the state are not enlarged by the dominion which the sovereign of the shore has over the sea as far as cannon shot will reach, which is generally considered a marine league. That dominion is conceded to him by the law of nations only for his safety, and to give him jurisdiction in ·cases governed by the law of nations.

The judgment should be for the defendants on the dismissal of the complaint.

---

## SUPREME COURT.