Trafford *v.* Adams Express Co.

W. H. TRAFFORD, Adm'r., *v.* ADAMS EXPRESS COMP'Y.

INJURIES RESULTING IN DEATH. *Statute. Construction. Husband entitled to damages for injury to wife.* Under the provisions of the statutes allowing a recovery of damages for a personal injury where death ensues, the husband is entitled to the damages which may be recovered for an injury to the wife resulting in death.

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.   N. BAXTER, Sr., J.

M. M. BRIEN, Jr., and A. L. DEMOSS for Trafford.

BATE & WILLIAMS for Express Company.

COOPER, J., delivered the opinion of the court.

On December 24, 1874, one of the delivery wagons of the Adams Express Company was left standing in front of a residence on a public street in Nashville, the horse attached thereto not being hitched, while the driver delivered a package at the house. In attempting to get into the wagon, after delivering the package, the driver stepped from a smooth stone on the curbing of the pavement, and, in the act, his foot slipped and he fell between the horse and the wagon. In falling, he grasped at the reins, but missed them, and struck the horse with his hand.   The horse be-

came frightened, and started off rapidly, and at the first crossing of the street with another he ran against Ann Moore, the plaintiff's intestate, inflicting injuries from the effect of which she died in a few hours. This suit was brought, March 3, 1875, by the plaintiff, as her administrator, to recover damages for the killing. Ann Moore died without children, leaving her husband Samuel Moore surviving, and certain nephews and nieces who were her next of kin. Both by the writ and declaration, the suit purported to be brought for the use of the nephews and nieces, naming them. The husband was not mentioned, and on the trial, he having in the meantime died, proof was introduced by the defendant tending to show that he was unwilling to sue the company. The trial judge was of opinion that the husband was, under the statute, entitled to the benefit of any recovery, and so instructed the jury, adding that if the husband had compromised and settled with the company for the killing of his wife, the plaintiff could not recover. The jury returned a verdict in favor of the defendant, and the court having refused to grant a new trial, the plaintiff appealed in error.

If the trial judge was in error in holding that the husband was entitled to the benefit of the recovery in this action, the judgment must of course be reversed, and this is, consequently, the first point to be considered.

Until changed by statute, the "artificial rule," as it has been aptly termed by Lord Hardwicke in *Garth* v. *Cotton*, 1 Dick., 215, of the common law, that per-

7—VOL. 8.

sonal actions die with the person, was recognized by the courts as prevailing in this State: *Jones* v. *Littlefield*, 3 Yer., 133; *Griffith* v. *Beasly*, 10 Yer., 434; *Governor* v. *McManus*, 11 Hum., 152; *Cherry* v. *Hardin*, 4 Heis., 199. And therefore no action for damages sustained by the death of a person would lie against the individual or corporation causing the death: *Hall* v. *N. & C. R. R. Co.*, Thomp. Cas., 204. The common law was changed by the act of 1851, ch. 17, brought into the Code secs. 2291–2.

The provisions of the Code are:

"2291. The right of action, which a person who dies from injuries received from another, or whose death is caused by the wrongful act or omission of another, would have had. against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his personal representative, for the benefit of his widow and next of kin, free from the claims of creditors.

"2292. The action may be instituted by the personal representative of the deceased; but if he declines it, the widow and children of the deceased may, without the consent of the representative, use his name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not in such case be responsible for costs, unless he sign his name to the prosecution bond.

"2293. If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin,

free from the claims of the creditors of the deceased, to be distributed as personal property."

Under these provisions, it was uniformly held that the action given could only be brought in the name of the executor or administrator of the person killed: *Hall* v. *N. & C. R. R. Co.*, Thomp. Cas., 204; *Flatley* v. *M. & C. R. R. Co.*, 9 Heis., 230; *Bledsoe* v. *Stokes*, 1 Baxt., 314. The Legislature thereupon passed the act of December 14, 1871, ch. 78.

The first section of this act is: "That sec. 2291 of the Code of Tennessee be so amended as to provide, that the right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children, or to his personal representative for the benefit of his widow or next of kin, free from the claim of creditors."

Section 2 is: "That section 2292 be so amended as to allow the widow, or, if there be no widow, the children to prosecute suit, and that this remedy is provided in addition to that now allowed by law in the class of cases provided for by that section, and section 2291 of the Code, which this act is intended to amend."

The object of the act of 1871 seems to have been to confer upon the widow, and if no widow, upon the children of the deceased, the right to sue in their

own names respectively, in addition to the right pre-
viously given to the personal representative. In other
words, the act regulates the mode of bringing the suit,
without altering the grounds of the action, or the in-
terest of the beneficiaries in the recovery. And so
it has been expressly held: *Collins* v. *East Tenn. &
Va. R. R. Co.*, 9 Heis., 841; *Greenlee* v. *East Tenn.
& Va. R. R. Co.*, 5 Lea, 418.

The construction put upon the provisions of the
Code was, in accord with the current of authority in
similar enactments, that they were not intended to be
limited to the case of the killing of a husband and
father, but were designed to abrogate the common law
rule, and to include every case of wrongful killing.
They were, consequently, held to apply where an in-
fant or a married woman was killed: *L. & N. R. R.
Co.* v. *Connor*, 9 Heis., 19; *Bream* v. *Brown*, 5 Cold.,
168. It has not, however, been determined whether
the husband would take any benefit in the recovery
where his wife has been killed. The point is one
of grave difficulty. On the one side, it is contended
that the recovery is, by the very words of the stat-
ute, to enure to the benefit of the next of kin, to
be distributed as the personal property of the de-
ceased, and that the husband and wife are not next
of kin to each other within the meaning of the stat-
ute of distributions. On the other hand, it is argued
that the husband is, *jure mariti*, entitled to the ben-
efit of any right of action accruing to his wife while
living, and that the recovery in this case is in her
right. It is further insisted that the word "widow,"

in the sections of the Code under consideration, should be held, in analogy to the general provision of the Code, sec. 50, that "words importing the masculine gender include the feminine and neuter," to include also the husband as "widower."

It is the settled law of this State that while the husband is not, accurately speaking, the next of kin of his wife, and does not derive his title to claim her personal property from the statute of distributions, yet he is entitled to her personalty, including rights of action, as husband, being by virtue of the marriage the owner thereof: *Hamrico* v. *Laird*, 10 Yer., 222. It is necessary, therefore, to consider critically the nature of the right of action in this case.

If the statute is to be strictly construed, and confined to the letter, the right of action of the deceased would pass to his personal representative only when there were "a widow and next of kin," and such a limitation was contended for in some of the States upon similar enactments. And it has been held in New York, upon a statute using these words, that, although both the widow and next of kin were not required, yet there must be either a widow or next of kin, and that the husband was excluded: *Tilley* v. *Hudson River R. R. Co.*, 24 N. Y., 158; *Drake* v. *Gilmore*, 52 N. Y., 389. But the ground of action under the statute of that State, as will be noticed more particularly hereafter, was the "pecuniary injury" to the wife or next of kin, not the injury to the deceased. And the law of that State was changed, by the act of 1870, ch. 78, so as to give the ben-

efit of the recovery to the husband, widow or next
of kin.

But the weight of authority undoubtedly is, and so
this court has repeatedly said, that the object of the
act was to abolish the common law rule, and to al-
low the right of action which the injured party would
have had if he had lived to survive to his personal
representative. The intent of the Legislature to this
effect is made plain by the language used in the va-
rious statutes. The original act of 1851, after declar-
ing, in the plain terms brought into the Code, that
the right of action, which a person who dies from
injuries would have had against the wrong-doer if
death had not ensued, shall not abate or be extin-
guished but shall pass to the personal representative,
provides that the amount recovered shall be distributed
to the parties entitled "in the same proportions as the
personal property of the deceased." The act of 1856,
ch. 94, brought into the Code sec. 1166 *et seq.*, which
makes a railroad company liable for all damages to
persons or property upon failing to comply with cer-
tain precautions prescribed "to stop the train and pre-
vent the killing or injury of persons or property,"
provides that the damages "may be recovered by the
person or persons injured or aggrieved, or by their
personal representatives." These acts have been car-
ried into the Code with some condensation of the
language, but without anything to change the intent.
They leave no doubt that the Legislature intended
that the right of action of the deceased should sur-
vive, and that the recovery should constitute a part

Trafford *v.* Adams Express Co.

of the personal estate of the deceased for distribution, "free from the claims of creditors." If the legislation be construed liberally, as merely abolishing the common law rule as to personal actions dying with the person, the particular distribution prescribed by the statute would only take effect when the fund recovered in right of the deceased was subject to distribution. If, for example, the person injured had compromised the right of action, or assigned the recovery in his lifetime, either nothing would pass to the personal representative under the statute, or any recovery which he might have would enure to the benefit of other parties.

The first change of the common law rule was made in England by Lord Campbell's act, 9 and 10 Vict., 93, which act, by reason of its peculiar wording, was held to have been intended to give compensation to the relatives of the person killed for the wrong done. The damages were not to be in the nature of a *solatium,* but compensation to the family of the deceased equivalent to the pecuniary benefits which the family might have reasonably expected from the continuance of his life: *Blake* v. *Midland R. R. Co.,* 18 Q. B., 93; *Bradburn* v. *Great Western R. R. Co.,* 10 Ex., 1. The injury to the deceased was not an element in the recovery, but only the pecuniary loss of the relative entitled to the benefit of the recovery, and therefore if no damage to the relative be proved, although he may be the father of the deceased, there can be no recovery: *Burke* v. *Cork, etc., R. R. Co.,* 10 Cent., L. J., 48; *Duckworth* v. *Johnson,* 4 H. & N., 653.

The first statute passed in this country on the subject was the act of the New York Legislature of 1847, ch. 450. That act made the person or corporation, responsible if death had not ensued, liable to an action for damages notwithstanding the death, to be brought by the personal representatives, the recovery to be "for the exclusive benefit of the widow and next of kin." The jury were allowed to give damages, not exceeding $5,000, as compensation "with reference to the pecuniary injuries resulting from such death to the wife and next of kin." Under this statute, as under Lord Campbell's act, it is the pecuniary loss of the next of kin which is to be recovered: *Quin* v. *Moore*, 15 N. Y., 432. This statute was copied literally or in substance by most of the States which undertook to modify the common law, and, of course, the measure of damages was the same. In Connecticut the Legislature provided in substance that all actions for injury to the person, although the same may result in instantaneous death, "shall survive to his executor or administrator," and the recovery is limited accordingly: *Goodsell* v. *Hartford R. R. Co.*, 33 Conn., 51. The Virginia act seems also to be an exception to the general rule: *Mathews* v. *Warner*, 1 Virg. L. J., 741. Where the right of action of the deceased, if death had not ensued, simply survives, the measure of damages would seem necessarily to be the injury to the deceased. The original statutes of the different States have been modified by more recent legislation, and the decisions of the courts conform

with the changes. The statutes are collected in 2 Thomp. on Neg., 1295 *et seq.*

Our statute, in the plainest possible language, provides that the right of action of the deceased for the personal injury shall not abate, but pass to the personal representative, and contains no provision for the estimating of the damages by the pecuniary injury to the beneficiaries entitled to the recovery. And it was at first held by this court that the damages recoverable were such as the person killed could have himself recovered if he had lived, and no more: *L. & N. R. R. Co.* v. *Burke,* 6 Cold., 45. But the court also held in the same case that there could be no recovery if the deceased was instantly killed. This ruling led to the curious result that while there might be a recovery for any lesser personal injury, there could be none for the greatest of all. The conclusion of the court was simply announced, not argued, and the logic by which it was reached is not very obvious. The statute provides that the right of action of a person, whose death is caused by the wrongful act or omission of another, shall not abate by his death. It manifestly contemplates that the cause of action which would have sustained a suit by the person injured if death had not ensued, shall pass to the personal representative. It makes no distinction between a case where the injury produces immediate death, and where the victim lingers for a longer or shorter period. All that is required is that the injury be of a character for which the aggrieved party could have sued if he had lived. And there is ce

tainly no more difficulty in estimating the damages of
an instantaneous killing, than for an injury which
produces death in a short although appreciable inter-
val.    In Massachusetts the courts, while holding that
the action will not lie if the death is instantaneous,
have allowed it where the death was not instantaneous,
and have held, in the latter case, that it does not
depend upon the intelligence, consciousness or mental
capacity of any kind on the part of the deceased after
he is injured and before death: *Mann* v. *Boston, etc.,
R. R. Co.,* 9 Cush., 108; *Hollenbeck* v. *Berkshire R.
R. Co.,* 9 Cush., 478; *Bancroft* v. *Boston, etc., R. R.
Co.,* 11 Allen, 34.    It is difficult to appreciate the
distinction, or understand the necessity for such re-
finements, especially in view of the fact that in every
fatal casualty there must be a conceivable point of
time, however minute, between the violence and the
extinction of life: per Comstock, J., in *Whitford* v.
*Panama R. R. Co.,* 23 N. Y., 465, 486.    It is not
surprising, therefore, that when the question again
came before this court, the previous decision was
upon this point overruled: *N. & C. R. R. Co.* v.
*Prince,* 2 Heis., 580.    It was also overruled on the
point that the damages recoverable were only such
as the person killed could have recovered had he
lived.    And it was decided that the recovery might
be both for the damages to the deceased and the
damages resulting from the death to the parties for
whose benefit the right of action survives.    The rule
was laid down generally, without qualification, the
learned judge, who delivers the opinion, remarking in

substance that, looking to the obvious purpose of the Legislature in this alteration of the common law, it satisfactorily appeared to have been so intended. In another part of the opinion, he adds a reason, which would only apply to the class of cases then before him, namely: "It would have been absurd to give the right of action for damages for the mental and bodily sufferings of a person whose death was instantaneous." The court adhered to the ruling, upon re-argument of the point, in a case of instantaneous killing, without assigning the same reason, in *Collins* v. *East Tenn. & Va. R. R. Co.*, 9 Heis., 841. It was simply followed in the *N. & C. R. R. Co.* v. *Smith*, 6 Heis., 174, a similar case. But it was extended to a case where the person injured lived a few hours, in *N. & C. R. R. Co.* v. *Stevens*, 9 Heis., 12, 14; and, perhaps, in *Railroad* v. *Mitchell*, 11 Heis., 400.

In this state of the decisions, the question of the statute of limitations applicable to the action of the personal representative for injuries to his intestate came before the court in *Fowlkes* v. *N. & D. R. R. Co.*, 9 Heis., 829, also reported in 5 Baxt., 663. By the Code, sec. 2772, actions for injury to the person are required to be brought in one year "after the cause of action accrued," and this statute was held to apply to this class of cases. The injury to Fowlkes's intestate was inflicted on the 31st of January, 1867, and administration was not granted on his estate, although he died a few days after the injury, until January 26, 1870, and the action was

commenced on the next day. A majority of the
court held that the purpose of the statute (Code, sec.
2291) was to repeal the common law rule, that ac-
tions for personal injuries die with the person; that
the statute makes no distinction between the cases
where the injured party lives for a time, and where
death is instantaneous; that the cause of action ac-
crues at the date of the injury, and is the same
whether the action be brought by the party injured
or his personal representative; that the statute of
limitations begins to run from the moment of the
injury, and is not suspended during the time between
the death of the party and the qualification of the
personal representative. The logic of this decision
rests upon the postulate that the statute repeals the
rule of the common law, and that it is the cause of
action of the person injured which survives, upon his
death, to his personal representative. The learned
judge who delivers the opinion, concedes that some
of the cases seem to have introduced a new element
of damages in cases where the action is brought by
the personal representative, namely, the injury to the
widow or next of kin, and adds: "Some of these
cases stand upon doubtful grounds." He calls atten-
tion to the fact that the statutes of other States,
specifying the State of New York, are not simply
remedial, but create a new cause of action in favor
of the personal representative of the deceased, which
is wholly distinct from, and not a revivor of the
cause of action which, if he had survived, the de-
ceased would have had for his bodily injury: *Whit-*

*ford* v. *Panama R. R. Co.*, 23 N. Y., 465. In such case, the cause of action would accrue upon the death of the party injured, and the statute might not run until there was a personal representative capable of suing, if the right to sue were limited to the personal representative. Two dissenting opinions were delivered. One of them concedes that the right of action accrues to the party aggrieved upon the happening of the injury, but thinks that on his death the right is thrown upon the personal representative, and is only barred in one year after his qualification. The other opinion is rested upon the ground that the right of action, after the death of the person injured, is entirely new, and is based on the damages to the widow and next of kin from the death of their parent.

Upon a careful examination of the question, and a review of the authorities and the law bearing on the subject, I concur with the majority of the court in the opinion delivered in *Fowlkes* v. *N. & D. R. R. Co.*, not only in the conclusion reached, but in the reasoning on which that conclusion is based. It seems to me clear that the Legislature, by the statutory provisions under consideration, intended to abolish the rule of the common law touching the abatement of rights of action for personal torts producing death, and to provide that the right of action of the person injured, subject to his control during life, should survive to his widow and children or personal representative as the case may be. And that the only damages which can be recovered in any action

under the statutes are the damages which the deceased was entitled to recover if he had sued. In this view, the statutory provisions are simply those of the abatement and revivor of the particular class of actions, the recovery, in the event of the death of the person injured, without a different valid disposition on his part, being distributable as other personal property of the deceased, free from the claims of creditors. The provisions dovetail exactly into our general system of laws regulating the rights of action of deceased persons. There is no anomaly either in the character of the recovery or in its distribution.

At common law, two separate causes of action may arise from the same injuries inflicted upon the person of the wife during coverture, one in the name of both husband and wife for her own injuries, the other in the name of the husband for the damages sustained by him in the loss of her services and society: *Hyde* v. *Scyssor,* Cro. Jac., 538; *Brockbank* v. *Whitehaven, etc., R. R. Co.,* 7 Hurl. & N., 834. And the husband might bring his action notwithstanding the death of the wife from the injuries, but no action lay for the death itself: *Baker* v. *Bolton,* 1 Camp., 493; *Eden* v. *Lexington, etc., R. R. Co.,* 14 B. Mon., 204. The right of action given by the statute for the injury of the wife which results in death is, therefore, independent of the husband's separate right of action at common law. It would include only the joint cause of action of husband and wife in right of the wife if death had not ensued, and any additional right of the wife for the injury

Trafford *v.* Adams Express Co.

by reason of her death: 2 Thomp. on Neg., 1240, 1259, 1272. The authorities differ upon the point whether, if the statute gives the husband the beneficial interest in the recovery for the death of his wife, his own cause of action can be united in the same suit with the cause of action arising in her right. Perhaps, under our system, which treats the person for whose use a suit is brought as the real party plaintiff, there would be no difficulty in allowing them to be united.

In the New York statute, the recovery, as we have seen, was compensation for the pecuniary injury to the widow and next of kin, not damages for the injury to the person killed, and it therefore followed logically that a husband had no interest in any recovery for the death of his wife, until the law was changed so as expressly to include him. The same result would follow under our statute if the recovery was, either in whole or in part, as compensation for the injury to the widow and next of kin, to the extent of so much of the recovery. And so it was intimated, but not decided, by Nicholson, C. J., in *Hagerty* v. *Hughes*, 4 Baxt., 222, 226. If, however, the right of action which survives for the death of the wife, is the right of action which vested in the husband and wife, in right of the wife, before her death, the result would be different, and the anomaly of depriving the husband of the recovery for the benefit of remote next of kin would not occur. For the wife's personal estate, including her rights of action, vest in the husband before administration taken

out, and he is entitled to the recovery *jure mariti:* *Elliot* v. *Collier*, 3 Atk., 527; *Hamrico* v. *Laird*, 10 Yer., 222; *Tune* v. *Cooper*, 4 Sneed, 296. It follows that the husband of the plaintiff's intestate was entitled to the damages in this case, and there was no error in the charge of the court on this point.

All the members of the court concur in the conclusion thus reached, without adopting or accepting in all respects the reasoning of the opinion. They agree that the recovery for a personal. injury to the wife which results in death will enure to the benefit of the husband under the statutory provisions discussed, and that there can be but one recovery in such case. If the injury to the person for whose benefit the suit is authorized to be brought is to be taken into consideration in estimating the damages, it would be, in this case, the injury to the husband, and not to the next of kin.

This action having been brought by the personal representative expressly for the next of kin, naming them in the writ and declaration, the conclusion reached seems necessarily to end the case. But there was no error on the part of the trial judge, in view of his construction of the statutes as to the right to the husband, to submit to them whether he had compromised his right of action with the express company, or, after examination, had become satisfied that the company were not to blame, and had waived all right of action by failing to sue within twelve months. These questions were fairly submitted to the jury.

The affidavits offered on · the motion for the new

trial were clearly insufficient. They disclose no fact which was not known before or at the trial, or which might not have been produced during the trial by the exercise of ordinary diligence.

Affirm the judgment.