BROWN, Administrator, Appellant, vs. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Respondent.

*November 28, 1898 — February 21, 1899.*

*Death by wrongful act: For whose benefit action can be maintained: Pleading: Survival of action for injuries to person.*

| | |
|---|---|
| 102 | 137 |
| 103 | 218 |
| 104 | 164 |
| 102 | 137 |
| 108 | 16 |
| 102 | 137 |
| 109 | 431 |
| 109 | 555 |
| 102 | 137 |
| 111 | ³487 |
| 102 | 137 |
| 844 LRA | 579 |
| 51 LRA | 235n |
| 102 | 137 |
| 115 | ¹336' |
| 60 LRA | 591 |

1. The liability created by sec. 4255, Stats. 1898, in case of the death of a person by an actionable injury for which such person could have recovered damages if death had not ensued, is for the benefit of certain relatives of the decedent mentioned in sec. 4256, Stats. 1898, and in default of such relatives there is no liability.

2. In an action for damages under said sections, if the complaint fails to show the then existence of relatives entitled to benefit by the recovery, it is fatally defective.

3. Under sec. 4253, Stats. 1898, actions for injuries to the person survive, though death ensue from the injury.

4. The right of action for an injury to the person which survives under sec. 4253 is separate and distinct from the loss to surviving relatives recoverable under secs. 4255 and 4256.

5. If a person die from the effects of an actionable personal injury, not having received satisfaction for his damages, action therefor for the benefit of his estate may be prosecuted to satisfaction after his death. [Whether such satisfaction in advance of an action under secs. 4255 and 4256, if circumstances exist rendering such latter sections applicable in any event, would be a bar to such action, not decided.]

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Action to recover damages for a personal injury to August Zilmer, deceased, and also damages for his death.   The complaint states all formal matters, and, in substance, that on the 29th day. of August, 1895, at the incorporated village of Deerfield in this state, at a crossing of defendant's railroad with a public street in such village, August Zilmer was traveling on the street with due care, riding in a wagon drawn by a horse, and while so circumstanced defendant's servants caused one of its locomotives to approach and go onto and over the crossing at an unlawful rate of speed, to wit, forty miles an hour, without in any manner signaling such approach, whereby, without contributory fault of Zilmer, the locomotive struck his horse and wagon, and threw him with great force and violence on the ground, bruising and wounding him upon his head, body, and limbs, thereby causing him to suffer great mental and physical pain, from the effects of which he on the same day died, to the plaintiff's damage in the sum of $5,000.   The complaint further stated that the deceased left no wife or father or mother or children, but left some brothers and sisters, and stated facts showing that a pecuniary loss was sustained by them by reason of his wrongful death, to the extent of $5,000.   The defendant demurred generally to the complaint, which demurrer was sustained, and from the order accordingly entered this appeal was taken.

For the appellant there were briefs by *Bushnell, Rogers & Hall*, and oral argument by *A. R. Bushnell*.

For the respondent there was a brief by *Fish, Cary, Upham & Black*, and oral argument by *John T. Fish*.

The following opinion was filed December 16, 1898:

MARSHALL, J.   Two questions are presented on this appeal: (1) Can brothers and sisters of one wrongfully killed recover damages from the wrongdoer to compensate them for the pecuniary loss thereby sustained ?   (2) Does a cause

of action for damages to a person, because of an injury from
the effects of which death ensues, survive to his adminis-
trator for the benefit of his estate ?   The decision of either
of these questions in favor of the appellant must result in a
reversal of the order appealed from.

Actions for death losses sustained by surviving relatives
are wholly statutory, and therefore, unless clearly thus given,
do not exist at all.   The subject in this state is covered by
secs. 4255, 4256, Stats. 1898, which provide that if the death
of a person be caused by the wrongful act of another under
such circumstances that if death had not ensued such person
could have recovered of such other damages for his injury,
such other shall be liable to an action for damages notwith-
standing the death, such action to be brought and prosecuted
in the name of the personal representative of the deceased
person for the benefit of the husband or widow of such per-
son if there be such surviving, otherwise for the benefit of
such person's lineal descendants, or, in default of such de-
scendants, such person's lineal ancestors.   We are asked to
hold that by such statutes the right of action for the wrong-
ful death of a person is conditional only upon the circum-
stances being such that if death had not ensued the decedent
could have proceeded against the wrongdoer for damages.
If the statute were susceptible of that construction, in any
reasonable view of the language used, and we think it is
not, the contrary view has been too long established as its
true meaning to leave the matter open to question at this
time.   In *Woodward v. C. & N. W. R. Co.* 23 Wis. 400, de-
cided thirty years ago, it was held that unless a person
named in the statute as entitled to the benefit of a recovery
when obtained be shown to be in being by the allegations
of the complaint, the calls of the statute are not satisfied
and the action for damages for the death cannot be sus-
tained.   That is in line with the numerous decisions in this
country and England where similar statutes exist, as abun-

dantly appears in the opinion of the learned chief justice in the case cited, and the numerous authorities cited there by counsel. It has never been since questioned successfully in this court, but on the contrary has been repeatedly affirmed. *Topping v. St. Lawrence*, 86 Wis. 526; *Regan v. C., M. & St. P. R. Co.* 51 Wis. 599; *Gores v. Graff*, 77 Wis. 174; *Schmidt v. Menasha W. W. Co.* 99 Wis. 300.

The reasonableness of that construction is fully realized when one considers, as the fact is, that the action for a death loss to a surviving relative is not a right by survivorship to the claim which existed in favor of the injured person in his lifetime. If that right of action exist at all, it is for the benefit of the estate ·under the statute, to be hereafter considered under the ,second point made by appellant. The death loss act of the English statute (9 & 10 Vict. 93), commonly called "Lord Campbell's Act," and the various laws of a similar kind that have been modeled after it, gave a new cause of action unknown to the common law, for the benefit of certain designated classes of surviving relatives. Such relatives do not take the cause of action for damages to the deceased by transfer to them by operation of law, or otherwise, but are enabled by statute to recover the pecuniary loss to themselves caused by the wrongful taking off of the decedent, the continuation of whose life would have been beneficial to them. As was said by Mr. Justice Orton in *Topping v. St. Lawrence*, 86 Wis. 526, the action accrues to the surviving beneficiary mentioned in the statute by reason of the death of the injured person caused by the wrongful act of another. It is strictly not proper to say that it is a cause of action which survives; it is rather a new action by secs. 4255 and 4256, which can be brought, not for the benefit of the estate, but solely for the benefit of the beneficiaries named in the statute.

Counsel's contention is that the liability is made absolute by sec. 4255, and therefore is not limited by the following

section which designates who shall be the beneficiaries. As before indicated, that question has long been foreclosed in this court, contrary to counsel's contention; nevertheless, if the question were now presented for the first time, in view of the fact that the section giving the right is coupled with the section for its enforcement, it would appear to be a very plain proposition that such remedy is exclusive and necessarily limits the right to those for whose benefit it may be enforced, i. e. to the particular beneficiaries named and in their order, that is, husband or widow, if there be such, otherwise lineal descendants, and, in default of such, lineal ancestors.

On the question of whether a cause of action for injury to the person survive to his personal representative in case death ensue therefrom, this court held in the affirmative in *Lehmann v. Farwell*, 95 Wis. 185, construing what is now sec. 4253, Stats. 1898, which provides generally that actions for the recovery of damages to the person shall survive. The subject there received most careful consideration, and no reason is perceived now for changing the ruling there made.

The learned counsel for respondent contend, with much learning, that the section last referred to, and secs. 4255 and 4256 of the statutes, giving a right of action to relatives in certain circumstances specified, should be construed together, so as to limit actions that survive under sec. 4253 to cases where death does not ensue from the injury. That claim has the merit of being supported by decisions elsewhere under similar laws, but, looking only to the language of the statutes, no good reason is perceived for resorting to construction at all to determine their meaning. The language seems too plain to allow that. We have not even good reason for saying, as some courts have, that the statutes were enacted at the same time, or went into effect at the same time, and it is therefore unreasonable to hold that the legislature intended to give two rights of action at the same time

for one injury. The law of this state conferring upon sur-
viving relatives the right to recover their pecuniary loss
caused by the wrongful taking off by death of a husband,
wife, child, father, or mother, has existed for over forty
years, while the law reviving the right, in favor of the per-
sonal representatives of a deceased person, to his claims for
damages to his person, was not enacted till 1887. But inde-
pendent of that circumstance, as before observed, the lan-
guage of the two provisions is plain. They refer to entirely
distinct losses recoverable in different rights,— the one in
the right of the deceased for the loss occasioned to him; the
other in the right of the surviving relatives for the loss to
them. Both are dependent on the injury, but only one de-
pendent on the death with surviving relatives to take under
the statute. The language of one provision is that "actions
for personal injuries shall survive," and of the other, "in
case of the death of a person by the wrongful act of another,"
under certain circumstances named, the wrongdoer "shall
be liable to an action for damages notwithstanding the
death of the person injured, if the death be caused in this
state." The only condition of the right of action in the
former case is the existence of the actionable claim for dam-
ages at the time of the death of the injured party. The
statute creates no new liability, but prevents the lapsing by
death of an old one. The only condition of liability under
the other provision is the existence of an actionable claim
in the right of the injured party at the time of his death
and the existence of the beneficiaries mentioned in the stat-
ute. The liability of the wrongdoer, while dependent on
the condition named, is not on the actionable claim called
for to satisfy such condition, but on a new right created by
the statute,— the right of the surviving relatives to com-
pensation for the loss which falls upon them. The language
of the statutes, when viewed in the light of the evident leg-
islative purpose, is too plain to justify courts in interpolat-

ing into them language not there by necessary implication from the context, in order to make them accord with the ideas of judges as to the best legislative policy. The judicial function, we need not say here, does not extend so far. It calls for a firm adherence to the law as written, if valid, without regard to individual opinions as to its being good or bad. In this we do not intend to suggest that the law in question, as construed here, is a bad law. On the contrary there appears to be much wisdom in providing that a person who wrongfully causes a personal injury to another, shall not profit by that other's death, so far as actual damages go, either to the deceased person or to the wife, husband, or lineal descendants or ancestors of such person.

True, as claimed by the learned counsel for respondent, and before indicated, several courts, for whose judgment we entertain high regard, in construing similar statutes have decided that the right of action to surviving relatives is exclusive, and that the personal injury action that survives under sec. 4253 does not include those where death ensues from the injury. A good example, among others cited in counsel's brief, is *Holton v. Daly*, 106 Ill. 131. That learned court reasons that there is but one ground of liability,— the wrongful act; and as all claims for damages grow out of the one wrong it is unreasonable to say the legislature intended there shall be two causes of action based upon it; that the more reasonable view is that the act making causes of action for personal injuries survive should be considered as referring to a special class of actions, not included in those named in the general provision giving a right of action to surviving relatives; that without that construction there would be a repugnance between the two provisions. The fallacy of that reasoning is easily apparent. True, in the circumstances named, there is but one wrongful act, but that is not the sole ground of action in the right of the deceased or the survivor. It takes the wrongful act and the loss to make

Brown vs. The Chicago & Northwestern R. Co.

the complete cause of action, and as the loss to the person upon whom the injury is inflicted must be recovered by or in his right, and the loss to the surviving relatives by or in their right, the causes of action are clearly distinct. It does not require, apparently, much clearness of mental perception to discover that if several persons are made to suffer pecuniary loss by one wrongful act, each may very properly have his independent cause of action and remedy for the loss resulting to him, and that, generally, in order to do complete justice, in the absence of some provision for a recovery for the benefit of all and a distribution of the proceeds, separate causes of action must necessarily exist.

The views of the Illinois court accord with the judgment of the supreme court of Kansas. *McCarthy v. C., R. I. & P. R. Co.* 18 Kan. 46; *Eureka v. Merrifield,* 53 Kan. 794; *Martin v. M. P. R. Co.* 58 Kan. 475. It is significant that the former treats the act for the survivorship of the right to recover damages to the deceased for the benefit of his estate as a special provision, and that for the benefit of surviving relatives as a general act, and that, giving them a literal interpretation, they are repugnant to each other in part; while the latter reverses the situation, treating the act of the claim for damages to the deceased as general, and that for the benefit of surviving relatives as special, the latter being intended to take away the right of survivorship for the benefit of the estate, which would otherwise be given by a literal reading of the former provision. The fallacy of both processes of reasoning grows out of a failure to observe the distinction between the wrong and the resulting loss; that though there be but one wrongful act and one physical injury, there may be several persons that suffer distinct losses, some of which are actionable at common law and some actionable dependent on the statute. Justice BREWER, who was a member of the Kansas court at the time the first decision there was rendered, and concurred in it, referring to the

subject when he was later called upon to consider the matter as a member of the Federal bench, in the case of *Hulbert v. Topeka*, reported in 34 Fed. Rep. 510, said, substantially, that he doubted the correctness of his former opinion, and followed it only in deference to the settled judicial policy of Kansas, the cause being one that arose there; that the basis of recovery under the two provisions of law under consideration, the one for the benefit of the estate of the decedent and the other for the benefit of his surviving relatives, are entirely distinct, the former being based on survivorship of the claim of the deceased, taking no note of the pecuniary loss to relatives, and the other on survivorship of relatives mentioned in the statute, taking no note of damages to the decedent; that the latter proceed regardless of whether the death was instantaneous or followed after months of pain and suffering, being damages to relatives by death to be measured by their pecuniary loss caused thereby; while the former is for loss that would otherwise be a permanent injury to the estate itself. For further illustrations of the distinction, the following in Mr. Justice Wilson's opinion in *Needham v. G. T. R. Co.* 38 Vt. 294, is quoted by Justice Brewer: "The principles on which the intestate's cause of action rested at common law are the same, irrespective of the cause of his death." It "died with his person but is revived by the statute in favor of his administrator." It includes "nothing more than his intestate's cause of action. The statute simply revives but does not enlarge the common-law right of the intestate." The provision for surviving relatives "introduced principles wholly unknown to the common law, namely, that the value of a man's life to his wife and next of kin constitutes a part of his estate." "Such damages to the widow and next of kin begin where the damage of the intestate ended, viz. with his death."

* The weakness of the theory that the action for injuries to the person, which survive, includes only those not covered

by the statute for the benefit of surviving relatives, is further illustrated by the fact that courts adhering to that view uniformly refer to *Read v. G. E. R. Co.* L. R. 3 Q. B. 555. The decision there is only to the effect that if an injured person have satisfaction of his claim before death, the subsequent death from the injuries does not confer a right of action upon surviving relatives; that such right exists only where there is an injury to a person and there is an existing claim for damages therefor at the time of his death. Justice BLACKBURN, who delivered the opinion, said, in substance, that the proper construction of the statute is that it gives a right of action to certain surviving relatives of a person when death was caused by the wrongful act of another, where he had not received satisfaction in his lifetime, and that to go further would be straining the language of the law. That seems plain. The language of our statute is that liability of the wrongdoer exists where the deceased could have recovered if death had not ensued. That clearly excludes the idea that where the decedent receives satisfaction for his injuries, the conditions requisite to the right of surviving relatives may exist notwithstanding. There is nothing in *Read v. G. E. R. Co.*, in conflict with *Blake v. Midland R. Co.* 10 Eng. Law & Eq. 443, where, in a very instructive opinion by COLERIDGE, J., it is said that Lord Campbell's act does not transfer to the surviving relatives mentioned the claim for damages previously possessed by the deceased, but gives to them an independent cause of action for damages peculiarly incident to their relation to the deceased. The two cases are often cited to opposite views, but are in fact, when correctly understood, in perfect harmony. The one holds that the right of the relatives named in the statutes is separate and distinct from that possessed by the deceased; the other, that the right of the relatives is contingent on the death of the injured person without having satisfied his claim for damages.

With proper regard for the argument of the learned counsel for respondent, we cannot well close this discussion without some review of the decision of the supreme court of Rhode Island in *Lubrano v. Atlantic Mills*, 19 R. I. 129, which is cited to our attention with great confidence. The case expressly holds with the Illinois court and the Kansas court, that the statute giving the right of action to personal representatives of a person wrongfully killed, for the benefit of certain relatives named, is exclusive. The case does not throw any new light on the subject under consideration, except as to the inherent weakness of the reasoning indulged in to support the theory which the distinguished court adopts. *Read v. G. E. R. Co., supra*, is cited without perceiving, apparently, that, as before indicated, it only holds that where the claim of the deceased person is extinguished, one of the conditions requisite to the cause of action for damages under Lord Campbell's act is impossible, therefore statutes on that subject have no office to perform; that it has no bearing on the question of whether, in the absence of such extinguishment, there are two rights or causes of action for distinct and separate losses. Again, the learned court falls into an error heretofore mentioned, in referring to the two statutes as one being general and the other special, and that the two in part refer to the same subject, viewing the liability of the wrongdoer as entire merely because based on a single wrong. As we have seen, each treats of a distinct species of loss, and for that is general. There is no question of repugnancy or implied repeal of one provision by another on the same subject, or the substitution of one right for another, to be considered, if we give effect to the plain reading of the law and not attempt to vary it because of consequences which to some minds may appear to throw unreasonable burdens upon the wrongdoer. It must be presumed that the legislature had all these matters in mind, and from its judgment there is no appeal.

The Rhode Island court, further discussing the subject, speaks of the right of survivorship as a mere remedy given as a substitute for that which existed in the right of the decedent. Here again, there is a confusion between rights and remedies. To say that sec. 4255 of our statutes gives a remedy for the one that at common law lapsed with the death of the decedent, is to say that it gives a new remedy for a pre-existing right. But there was no such pre-existing right of the surviving relatives to recover their loss caused by the wrongful death. The right or cause of action itself is new, and the remedy to enforce it as well, as observed, in effect, in *Topping v. St. Lawrence*, 86 Wis. 526. The court further, in support of its decision, refers to *Needham v G. T. R. Co.* 38 Vt. 300, stating that the Vermont court later, in *Legg v. Britton*, 64 Vt. 652, overruled its former judgment on the subject of whether there were two causes of action in the circumstances under discussion. A careful reading of the opinion in the later Vermont case, discloses the fact that it is there held, in perfect harmony with the early case, that two causes of action exist,— one in the right of the estate, and the other in the right of the surviving relatives where the cause of action of the deceased is not extinguished before his death. The court said that the extinguishment of the cause of action in the right of the deceased was a bar to that in favor of the surviving relatives. There, the action for damages to the injured person was brought in his lifetime and prosecuted to judgment and satisfaction after his death, and the court said that under such circumstances the right of the deceased was extinguished with the same effect as if satisfaction had occurred before death, therefore that the circumstances requisite to the application of the statute, giving the right of action to the widow and next of kin, did not exist. Using substantially the language of the court: there was left no proper office for the act for the benefit of the widow and next of kin to perform.

There are many other cases bearing on the subject before us, but they do not add anything to what has been said, or call for further discussion, so we shall not further extend this opinion by referring to them. We are well satisfied that sec. 4253 preserves for the benefit of the estate of a deceased person the cause of action possessed by him in his lifetime for an injury resulting in his ·death, and that it is not affected in any way by the other right or cause of action given by secs. 4255 and 4256 to his surviving relatives to recover for the loss sustained by them; that such is the plain meaning of the statutes, and that if the language used were open to construction at all, the view we have adopted is supported by far the better reasoning and the greater weight of authority. The supreme court of Michigan, in *Hurst v. Detroit City R'y*, 84 Mich. 539, quite recently had the same subject under consideration, with the same result at which we have arrived. That court said, in effect, that a pecuniary loss sustained by a surviving relative resulting from a wrongful death, recoverable under the statute, is one thing; and that damages for the injury to the deceased is another; and that a recovery for the former is no bar to an action for the latter.

Of course, there is no question as to whether a recovery on one claim will bar an action for the other; therefore, what is said should not be taken as deciding that question. We have referred to cases holding that a satisfaction of a claim in the right of the estate leaves the statute giving the other right of action no office to perform, merely in support of the position that the two statutes deal with separate and distinct rights.

The complaint demurred to, by sufficient allegations, shows that plaintiff's intestate was injured by actionable negligence of the defendant, and that he lived thereafter some period of time. The length of time he survived the injury is not stated and is not material except as to the damages recov-

erable, and that does not go to the cause of action. *Bancroft v. B. & W. R. Corp.* 11 Allen, 34; *Hollenbeck v. Berkshire R. Co.* 9 Cush. 478; *Tully v. Fitchburg R. Co.* 134 Mass. 499; *Chandler v. N. Y., N. H. & H. R. Co.* 159 Mass. 589; *Corcoran v. B. & A. R. Co.* 133 Mass. 507; *Kellow v. C. I. R. Co.* 68 Iowa, 470, 21 Am. & Eng. R. Cas. 485. Within the principles stated the complaint states one cause of action, and that for the recovery of damages which the deceased sustained and which he might have recovered for had he lived. Therefore the decision of the trial court sustaining the demurrer to the complaint must be reversed.

*By the Court.*— The order appealed from is reversed, and the cause remanded for further proceedings according to law.

The respondent moved for a rehearing, and the following opinion was filed February 21, 1899:

MARSHALL, J. The motion for a rehearing, made on behalf of the respondent, has received careful, tireless, and patient consideration, as did the case when originally considered, notwithstanding some suggestions to the contrary made in the second argument of the distinguished counsel who made such motion. It is not considered that there was any warrant for such suggestions. They had no proper place in counsel's argument. The importance of the case furnished a sufficient excuse for the motion, and counsel's resources for legitimate argument are too well known to warrant the belief that there was any necessity of resorting to other means of enforcing their logic, even by way of emphasis. Calm, fair, consideration of legal questions, while not as necessary to the proper performance of the duties of counsel as those of the court, is quite as helpful in the one case as in the other. It would be well to bear that in mind, especially in presenting motions for re-argument. The situation of counsel at such a time, especially where great in-

terests are involved, and the decision disappoints hopes and convictions born of much careful study of a subject, is well suited to test to the uttermost their power of calm consideration and courteous review of reasons and authorities judicially declared·to lead to and require the decision objected to. But whether counsel stand successfully such test or not, the duty of the court to carefully and dispassionately consider, and judicially determine, the questions presented, uninfluenced by any other consideration than to discover and pronounce the law correctly, remains the same.

The suggestion of the learned counsel as to the importance of this case and the far-reaching character of the decision rendered is fully appreciated, and was from the start. It is also fully appreciated that the result of the decision will probably be additional labor for this court, but it is not perceived why that can by any possibility change the law. Legislative enactments are to be rigidly enforced within constitutional limitations, according to the legislative will. If courts were permitted to read them so as to minimize, to any degree, judicial labor, or to adapt them to individual notions of judges as to the best governmental policy, it would be very easy to nullify or change the written law so as to defeat the people's will and destroy the very foundation of a government by the people. So the menace of an increase of judicial labor, and the difficulties of administering the law as we have declared it to be, does not appear at all weighty in favor of changing the decision heretofore rendered.

We should say in passing that the suggested difficulties in administering the law, and danger of injustice to defendants, are largely imaginary, and will gradually disappear as we adapt ourselves to the new conditions which the revival statute creates. The trial judge can easily, by proper instructions, limit the recovery in a revived action to the loss actually caused to the deceased prior to his death; and in

Brown vs. The Chicago & Northwestern R. Co.

the action under sec. 4255, to the pecuniary loss sustained by the surviving relatives entitled to the benefits of that provision. If the two causes of action are joined, the court can readily require the jury to make separate findings as to damages. As the elements entering into each are entirely distinct, it will readily be seen that there is no more danger of a double recovery under such circumstances than in any one of the numerous cases that might be suggested where two causes of action result from a single wrong. The injustice of two recoveries for distinct grievances, suggested by the learned counsel and by some courts that have taken the view pressed upon us, is not perceived. A little dispassionate reflection on the subject, it would seem, would prevent unqualified condemnation of the legislative wisdom that says, if a person be wrongfully injured, the pain and suffering and expenses to him in consequence thereof shall not be lost to his estate by the circumstance of his death from the injury before receiving satisfaction for his damages, even though the damages to his surviving relatives, to satisfy their own grievance, may be recovered.

What has been said sufficiently meets the preliminary observations and reasons given in the argument for the rehearing. We will now endeavor to take up in their order the objections to the decision, relied upon.

It will not be necessary to go over, to any great length, the subjects discussed in the former opinion. As before indicated, they have all been once considered with all the deliberation and care that should characterize the work of a tribunal of last resort, whose judgments must stand as the infallible truth, there being no power under our system by which such judgments can be changed after the brief time for review allowed by the Code shall have expired.

Our attention is called to the rule stated in the opinion of Chief Justice MARSHALL in *Cohens v. Virginia*, 6 Wheat. 264, to the effect that, though general expressions in an opinion

which go beyond the case may be respected, they ought not to control the judgment in a subsequent suit.   That proposition is familiar, and is not liable to be forgotten by judges who have been called upon to apply it in their daily work for a series of years.   The trouble with the learned counsel's argument is that they apply the rule, as it seems, to everything in a legal opinion not a part of the final conclusion reached,— to what is judicial *dictum* and even to the reasons upon which the decision is based and are essentially a part of it, when that seems necessary to dispose of authorities that are clearly opposed to their contention; and again, treat mere observation made by a judge in writing an opinion by way of illustration or argument, referring to collateral topics for that purpose, as a part of the deliberate judgment of the court, when, if so considered, they support counsel's contention.   There are few decisions of any court but that might be successfully attacked if such a method were permissible. What is here said will be borne out, in our judgment, by what follows.

It is conceded by the learned counsel that if we were right as to what was decided in *Lehmann v. Farwell*, 95 Wis. 185, the decision heretofore reached in this case rests on authority. The question there was whether a claim for a personal injury based on actionable negligence is assignable.   The court decided that the question turned on whether a cause of action to enforce such a claim survives the death of the original owner; that by the common law the answer must be in the negative, but under sec. 4253, as it now stands, making all causes of action for false imprisonment, assault and battery, or other damages to the person, survivable, all bodily injuries resulting from actionable negligence are included, and therefore the question must be answered in the affirmative.   Said Mr. Justice WINSLOW, the statute "includes every action the substantial cause of which is a bodily injury," 'and the language in that regard is too plain to leave any room for rules

of construction to operate.' To support that, the decisions of the Massachusetts court, made under a similar statute adopted in 1842, the first act of its kind in this country, and from which our own was doubtless taken, holding the same, were cited. It needs no discussion to show that the familiar rule stated by Chief Justice MARSHALL, with which the learned counsel prefaced his review of *Lehmann v. Farwell*, has no application to it whatever. The expression, that the survival statute includes every actionable personal injury, and is too plain to that effect to require construction, was not *obiter*,— it was not even judicial *dictum*. It was the very groundwork of the opinion itself, and governs this case beyond reasonable controversy, unless we are to overrule it.

It is a mistaken opinion that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case, and all the questions presented and considered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved. *Trustees of School Dist. v. Stocker*, 42 N. J. Law, 115. The judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it. *Quackenbush v. W. & M. R. Co.* 71 Wis. 472; *Pray v. Hegeman*, 98 N. Y. 351. Nothing is *obiter*, strictly so called, except matters not within the questions presented — mere statements or observations by the judge in writing the opinion, the result of turning aside for the time to some collateral matter by way of illustration. *Buchner v. C., M. & N. W. R. Co.* 60 Wis. 264; *Rohrbach v. Germania F. Ins. Co.* 62 N. Y. 47; *Michael v. Morey*, 26 Md. 239; *Clark v. Thomas*, 60 Tenn. 419; *State ex rel. Nourse v. Clarke*, 3 Nev. 566; *Marbury v. Madison*, 1 Cranch, 137. The test of what is *obiter*, by means of which counsel confidently brush aside the decisions of this court on the very point at issue, and the deliberate decisions of many other

courts on the same point or on questions essentially involved, was pressed upon our attention in *Buchner v. C., M. & N. W. R. Co., supra,* was there fully considered, and was rejected. A study of the opinion in that case, written by the present chief justice, is commended as the most effectual remedy for the mistaken notion, not only that a decision is not authority except upon the very point necessary to it, but that *obiter* is to be rejected, always, as entirely without authority. The opinion quotes the rigorous rule by which counsel test authorities fatal to their contention; then the observation of an eminent text writer, whose writings stand as authority in every country where the common law to any extent prevails, that "it is difficult to see why, in a philosophical point of view, the opinion of the court is not as persuasive on all the points which were so involved in the cause that it was the duty of counsel to argue them, and which were deliberately decided by the court, as if the decision had hung upon but one point," and adds: "Such *dictum,* if *dictum* it is, should be regarded as 'judicial *dictum,*' in contradistinction to mere *obiter dictum,*— that is, an expression originating with the judge alone, while passing, by the way, in writing his opinion, as an argument or illustration drawn from some collateral question." And further adds that even such expressions are by no means to be rejected as not entitled to be regarded at all; that while they are not binding, they are not without authority; neither is their use reprehensible, as evidenced by the fact that some of the most sacred canons of the common law have their origin in the mere *dicta* of judges.

At this point a suggestion should be noticed, that in considering sec. 4253 we overlooked the familiar rule of "*Noscitur a sociis.*" *Hiner v. Fond du Lac,* 71 Wis. 82, where there is an intimation that such maxim may play an important part in determining the meaning of the statute under consideration, is referred to. Why the discovery of such a

serious omission in this case, and not in *Lehmann v. Far-well*, 95 Wis. 185, where the statute was first considered and its meaning judicially determined, or in the multitude of cases in other courts where similar statutes were construed, in none of which was it supposed that the rule was applicable! That is not easily comprehended. The maxim "*Noscitur a sociis*" is not a rule of interpretation by which the meaning of one word or designation, or that of several such, used in close connection, governs in determining the meaning of other words or designations used in the same connection. You may know a person by the company he keeps. You may know the meaning of a term by its associates,— what precedes and what follows it. When? Not in every case; but when not apparent from the language itself. It is a rule of construction to be resorted to where there is use for construction, not otherwise. The court said in *Lehmann v. Far-well* that the statute is too plain to admit of construction, hence no rule to that end has any application. The latter familiar rule was evidently not in mind when it occurred that, through forgetfulness in writing the former opinion, the maxim "*Noscitur a sociis*" was overlooked. To seek to apply it in determining the meaning of the statute under consideration, in view of the fact that similar statutes have existed in other states for nearly half a century, and been universally supposed to cover injuries from actionable negligence, and thereby reach a different conclusion, would be what might be called judicial recklessness.

The idea that our statute (sec. 4255) does not grant a new right of action, but continues an old one, with different beneficiaries and different rules for assessing damages, is urged as correct with such confidence that we are called upon to go over the subject anew. No attempt will be made to harmonize all the conflicting observations found in decisions elsewhere regarding the nature of Lord Campbell's act. That cannot be done, and it is not necessary, for most of the

conflicts will disappear as one applies judicial observations to the particular facts in regard to which they were made. We said in the former opinion that the view that the statute for the benefit of surviving relatives confers a new right of action for a grievance separate and distinct from that of the injured person, is supported by the better reasoning and the greater weight of authority. That is adhered to, and it is considered that what follows leaves little or no room for reasonable controversy as to its soundness, if reliance can be placed upon the evident purpose of the statute or authorities elsewhere. It is suggested that the conclusion was reached by illogical reasoning based upon *obiter* observations in judicial decisions. We will consider that.

We said that the cause of action of the injured party, which survives, is separate and distinct from the cause of action in favor of surviving relatives under sec. 4255; that a cause of action unsatisfied at the death of the injured party, for compensation for his injuries, is a condition of the operation of such section so as to give a right of action to the survivors therein named; that the extinguishment of the primary cause of action leaves the statute with no office to perform; that in the absence of such extinguishment there are two rights or causes of action for distinct and separate losses. That was supposed to be supported by numerous authorities cited in the opinion, and it does not seem to have occurred to the courts where such decisions were rendered that the reasoning was illogical or the conclusion arrived at a *non sequitur*. That characterization was made of the reasoning and conclusion referred to. How one can draw from such reasoning and conclusion the idea that the premises reasoned from contemplated the existence of two causes of action before the death of the injured party, and that the idea expressed was that the satisfaction of one of such existing causes of action satisfied the other, as counsel seems to have assumed in designating the conclusion reached as a *non seq-*

*uitur*, is not perceived. It seems perfectly clear that the idea expressed was, that before the death of the injured party there is but one cause of action; that if that be not extinguished before such death, by the operation of sec. 4255 there may be another cause of action; that while before the death there can be but one such cause, if that survive there may be two. The learned counsel evidently forgot for the moment that the reasoning, though clothed in the language of the writer of the opinion, was based on the same premises, and proceeded by the same mental process, with language definite and clear, to the same conclusion as that in the opinion of Justice Coleridge in *Blake v. Midland R. Co.* 10 Eng. Law & Eq. 443; Justice Brewer in *Hulbert v. Topeka*, 34 Fed. Rep. 510; Justice Wilson in *Needham v. G. T. R. Co.* 38 Vt. 294, and many others in numerous opinions in cases cited, and still others that will be cited in this opinion, which, on account of counsel's labor, must be assumed not to have escaped their notice.

Our attention is again called to *Read v. G. E. R. Co.* L. R. 3 Q. B. 555, decided in 1868, and *Griffiths v. Earl of Dudley*, 9 Q. B. Div. 357, in support of the continuation of the old cause of action theory   The question in both cases was, Does the satisfaction of the claim of the injured party in his lifetime leave Lord Campbell's act still applicable to the situation created by the death of such party? The nature of the statute otherwise, particularly its proper construction in connection with a statute preserving, for the benefit of the estate, the common-law right of action for damages to the injured person, was not thought of. What is said as to the statutory right not being new, but a right conferred in place of an old right, is much nearer pure *obiter* than what is called such in the argument on the motion for rehearing in reviewing decisions cited by this court as authority. In neither of the cases is *Blake v. Midland R. Co.*, *supra*, decided in 1852, referred to, where the exact nature of the

statutory action was considered, and, in the learned opinion given by Justice COLERIDGE, said to be a new right and not a right by transfer or continuation of the claim of the deceased, which opinion has been referred to as ‘an authority in many courts and by many text writers since that time. "The statute does not," said Justice COLERIDGE, "transfer the right of action of the deceased to his representatives, but gives to them a totally new right on different principles." The three cases are, really, in perfect harmony when rightly understood. On the one hand it is said Lord Campbell's act is in the nature of a survival statute and does not confer a new right. That is true in the sense the English court doubtless understood its own language; that is, that the compensation to surviving relatives was conferred in place of that of the injured person, which, by the common law, was extinguished by death. On the other hand, it is said Lord Campbell's act confers an entirely new right, which, too, is obviously true in the sense that it is a right of recovery by different persons, for different losses, on different principles than were known to the common law. That there is any such material variance between the two ideas as courts in some jurisdictions have discovered and assigned as a justification for holding that plain language in a legislative act, making survivable all claims based on actionable negligence, does not mean that but something else, is not perceived. LUSH, J., said in *Read v. G. E. R. Co., supra,* that it was not the intention of the English statute to make the wrongdoer pay twice for the same injury, so the right was there spoken of as not new and independent, but a right in substitution for the lapsed right. That does not conflict with the other idea that none of the elements of damage, of the right which lapsed by common-law rules, are transferred by the statute to the beneficiaries therein named, and in that sense that the right conferred by statute is new. Therefore, the purpose of Lord Campbell's act was

not to make the wrongdoer pay damages twice for the same wrong; it was to give to the surviving relatives a right on condition.   That condition, in case of a survival of the right of action, which fails by the common law, exists nevertheless; and if the original inducement for the granting of the new right be removed by preserving the old right under another statute, that does not by any means affect the situation, for a sufficient inducement is yet left to uphold the statutory right.

That we have expressed correctly the views of the English courts is abundantly borne out by numerous cases, some decided before and some after *Griffiths v. Earl of Dudley*, not before cited, including a very recent case passing directly on the question, which was not before us when the previous opinion was prepared and which has evidently not received the attention of respondent's counsel.   *Leggott v. G. N. R. Co.* (1876), 1 Q. B. Div. 599; *Bradshaw v. L. & Y. R. Co.* (1875), L. R. 10 C. P. 189; *Barnett v. Lucas* (1872), 6 Ir. R. C. L. 247; *Robinson v. C. P. R. Co.* [1892], App. Cas. 481; *Canadian Pac. R. Co. v. Robinson*, 19 C. S. C. 292; *Seward v. Vera Cruz*, 10 App. Cas. 59; *Pym v. G. N. R. Co.* 4 Best & S. 396.

In *Leggott v. G. N. R. Co.* the question was, Does a recovery under Lord Campbell's act preclude a recovery for the benefit of the estate, of damages to the injured person?— the precise question in this case.   The affirmative, unless barred by a recovery under Lord Campbell's act, was conceded for the purposes of the case, though the rule generally as to that was otherwise.   The direct question left was the one indicated, namely, Does a recovery after death in one right bar a recovery in the other?   And on that the court decided in the negative.   QUAIN, J., in deciding the case said, the two actions are entirely different things, one for the loss the estate has suffered and the other under Lord Campbell's act, which " enables an action to be brought in

a case where it could not have been brought before that act, namely, when the man has suffered a personal injury and dies in consequence. After his death, before Lord Campbell's act, no such action could have been maintained, because the death destroyed it. It fell with the life of the individual injured. Now Lord Campbell's act gives an entirely new action, not an action connected with the estate of the deceased in the slightest degree, and the damages recoverable in it would be no part of the estate of the deceased. . . . I therefore feel clear upon the point that these actions are not brought in the same right, and that, therefore, the finding in the one does not constitute an estoppel in the other."

If the foregoing leaves doubt in the minds of the most skeptical, as to the position of the English courts, it will be removed by *Robinson v. C. P. R. Co.*, decided by the House of Lords in 1892. That is probably the most recent expression of such courts on the subject. The case arose in Canada. The statute is similar to our sec. 4255, except it requires, as a condition of its operation, death of the injured person without having satisfied his claim. The word "satisfied" does not occur in our statute, but words equivalent so far as relates to the extinguishment of the claim. The Canadian act further provides that the beneficiary may bring the action direct. There is a limitation of the right of the injured person to commence an action to enforce his claim for damages, to one year after the happening of his injury. In the given case the period was allowed to lapse and death then occurred. Action was then commenced to enforce the statutory liability to surviving relatives. The loss by prescription of the primary claim was urged in bar of the statutory right. The Canadian supreme court sustained that, and by special leave the cause was carried to the House of Lords where, all the members of the privy council who heard it concurring, Lords WATSON, MACNAGHTEN, MORRIS, HANNEN,

·SHAND and SIR RICHARD COUCH, the judgment of the lower court was reversed upon the ground that the right of action of surviving relatives, contingent on the death of the injured person without having satisfied his claim, is a new and independent right which vests on the happening of the contingency mentioned in the statute; and that such contingency is death from the negligent injury without the injured party having *satisfied his claim;* that an extinguishment of such claim by prescription is not the *satisfaction thereof* contemplated by the act, which requires the active participation of the injured party, and is not satisfaction by mere operation of law.   There was no difference of opinion between the last decision and the one reversed, except as to the scope of the word "satisfied" used in the Canadian act.   Both courts held that the statutory action was to enforce a new right. Justice STRONG, in delivering the opinion of the lower court, said: "It has been determined in England that the action under Lord Campbell's act is not the same action as that which the deceased person would himself have had at common law if he had survived, but a new action given by statute."   Again he said: "As I have said before, I am of the opinion that the action, being of the same nature, and indeed the same action in all respects, as that conferred by Lord Campbell's act, it must, as an action on that statute is considered in England, be deemed to be a new action, but still a new action dependent on the condition that the action of the deceased had not, at the time of his death, been barred or extinguished."   With this we rest the subject under discussion as to the holdings of the English courts.

In support ·of what was formerly said, that the great weight of authority in this country is in favor of the doctrine that there may be two independent causes of action for distinct losses for a single injury, in the circumstances presented by this case, the following additional authorities are referred to: *Safford v. Drew*, 3 Duer, 627; *Chicago v.*

Brown vs. The Chicago & Northwestern R. Co.

*Major*, 18 Ill. 349; *Davis v. Railway*, 53 Ark. 117; *Whitford v. Panama R. Co.* 23 N. Y. 465; *Hedrick v. Ilwaco R. & N. Co.* 4 Wash. 400; *Vicksburg & M. R. Co. v. Phillips*, 64 Miss. 693; *Connors v. B., C. R. & N. R. Co.* 71 Iowa, 490; *Putman v. S. P. R. Co.* 21 Oreg. 230; *Mulchahey v. Wash. C. W. Co.* 145 Mass. 281; *Belding v. B. H. & Ft. P. R. Co.* 3 S. Dak. 369; *Hamilton v. M. L. & T. R. & S. Co.* 42 La. Ann. 824. They are all to the effect that the right under statutes similar to our sec. 4255 is new and independent, subject only to the conditions therein named, and that if the primary cause of action survive, both may be enforced, and at the same time. Said DENIO, J., in *Whitford v. Panama R. Co.*, *supra*, speaking of a situation where there was no survival statute: "At common law the right of action for damages on account of bodily injuries, which belonged to the deceased while he lived, was extinguished by his death. The statute does not profess to revive that cause of action in favor of the executor or administrator. The compensation for bodily injuries remains extinct, but a new grievance of a distinct nature, namely, the deprivation suffered by the wife or children or other relatives, of their natural support and protection, arises upon his death and is made the subject of a new cause of action in favor of those surviving relatives, though prosecuted in point of fact by the executor or administrator."

In *Davis v. Railway*, *supra*, the court by COCKRILL, C. J., speaking of statutes similar to our secs. 4255 and 4253, said: "The English rule, which is commonly followed by the courts of the states whose statutes embody the provisions of Lord Campbell's act, is that the right of action, given by the latter statute to the personal representative of one whose death has been caused by the default of another, is created by the statute and is not a continuation of the right of action which the deceased had in his lifetime, although the new right arises only by preserving the cause of action which was in the de-

ceased. If the deceased never had a cause of action, none accrues to his representative or next of kin. The right which accrued to the deceased revives to the administrator by virtue of the statute [our sec. 4253]. The newly created right [our sec. 4255] results from, and accrues on, the death of the injured party. Both actions are prosecuted in the name of the personal representative and may proceed *pari passu* without a recovery in the one having the effect of barring a recovery in the other. The suits are prosecuted in different rights and the damages are given upon different principles to compensate different injuries. One is for the loss sustained by the estate and for the suffering from the personal injury in the lifetime of the decedent, the recovery of which goes to the benefit of decedent's creditors if there are any; the other takes no account of the wrong done to the decedent, but is for the pecuniary loss to the next of kin occasioned by the death alone. The death is the end of the period of recovery in one case and the beginning in the other. In one case the administrator sues as legal representative of the estate for what belonged to the deceased, in the other he acts as trustee for those upon whom the act confers the right of recovery for the pecuniary loss inflicted upon them."

Further quotation from opinions would only unnecessarily prolong this opinion. Those given are in line with the other decisions cited. It is quite likely that the lapsing of the cause of action in favor of an injured party by his death, according to the rule of the common law, was the inducement for the passage of Lord Campbell's act,— the very bottom of it, as said in *Hecht v. O. & M. R. Co.* 132 Ind. 507, and from that we find some judges regarding the new cause of action as a continuation of the old, and others holding that the cause of action under the statute is an entirely different cause of action for the benefit of different persons, recoverable in a different right, and including entirely different elements of damage. That the actual loss sustained by the

surviving relatives was ample inducement for the passage of the act for their benefit, and that, in providing for the survival of the cause of action of the injured party for the benefit of the estate, it was so deemed, is too clear from the unmistakable language used to admit of a contrary view. We leave this branch of the subject, suggesting, in closing, that our statutes are substantially the same as those of Massachusetts, so .long back as 1842, the survival statute there having been adopted at that date as before indicated. The decisions which subsequently followed, construing such statutes, are all in accordance with the conclusion we have reached.

We proceed now to show that what the learned counsel was pleased to call loose talk and *obiter* in opinions of other courts cited in our former opinion, was the deliberate judicial determination of such courts, or such judicial *dicta* as should be regarded as authority on the subjects treated.

We referred to the language of Justice BREWER in pronouncing judgment in the United States circuit court for the district of Kansas, in *Hulbert v. Topeka,* 34 Fed. Rep. 510. Counsel call that *obiter,* and suggest that the justice's idea was based on *obiter* observations of other courts. *Needham v. G. T. R. Co.* 38 Vt. 294; and *Blake v. Midland R. Co.* 10 Eng. Law & Eq. 443, were cited by Justice BREWER. As to the English decision sufficient has already been said. Reference is had to that at this point. Justice BREWER was called upon to judicially consider what the situation was under the Kansas statutes, which are similar to ours, in circumstances similar to those we have in this case. As a member of the supreme court of Kansas he had participated in a decision to the effect that if death ensue from an injury no cause of action for the benefit of the estate survives; that the right of action to the surviving relatives is exclusive. As an original proposition the learned judge clearly indicated that he deemed such decision wrong, but that it was

binding on the federal court in a case arising in Kansas.
His expressions of opinion were properly made in the case,
and undoubtedly such as he felt bound to make, in order
that the court might not be embarrassed by the decision
rendered, in the event of a case being thereafter presented
where the court would be free to decide according to its
judgment of the law, unbridled by the decision of some
other court. What was said should be treated with more
deference than loose talk. So far as other courts are con-
cerned, it is entitled to consideration quite equal with the
Kansas decision to which it refers.

Now a few words in regard to the Vermont case, *Need-
ham v. G. T. R. Co.* 38 Vt. 294, which will be considered in
the light of *Legg v. Britton,* 64 Vt. 652. What is said in
the former on the subject before us, in the argument for
rehearing here is called *obiter* and said to have been disap-
proved as such in the later case. True, the question of
whether the right of action to surviving relatives is a new
and independent right, and whether the right of the de-
ceased may survive and under any circumstances the two
rights be enforced independent of each other, was not neces-
sarily decided in the *Needham Case;* yet the subject was
considered, was unquestionably presented by counsel on both
sides, was supposed at the time to be a question proper for
determination, and was deliberately determined. As we
have before shown, what was said in reaching that deter-
mination is not *obiter.* It is at least judicial *dictum.* The
case has been regarded as authority by courts and text
writers generally. With but few exceptions it has been
given all the force of an adjudication by the court on the
very point referred to. Of course it was not controlling on
the Vermont court, neither would it be here, even if the
case had depended on the question. It was not discredited,
but rather was affirmed, in the subsequent decision in *Legg
v. Britton.* All there said is that the language of the for-

mer decision, on the subject here discussed, was not control-
ling, because the question was not necessarily decided in
reaching the final conclusion on the point at issue in the
case.   There is no intimation that the point was not delib-
erately passed upon, or but that what was said in regard to
it was entitled to respect.   The idea expressed was that the
court was free to consider the subject in the subsequent case
as an original question, not disregarding, however, as with-
out authority, the early case.   After reaching that conclu-
sion the question was considered anew, and a result reached,
as said in our former opinion, substantially the same as be-
fore.   Chief Justice Ross, who delivered the opinion, met
the contention respondent supports here, by saying, in sub-
stance, that the statutes conferred separate and distinct
rights, one by survival and the other a new right dependent
on conditions mentioned in the statute.   " In conferring this
new right of recovery," said the chief justice, " for the same
wrongful act, the legislature could place such limitations
upon it as it judged expedient.   .   .   .   The same wrong-
ful act frequently furnishes two independent rights of re-
covery, as in the case of an injury to the wife, or an injury
to a servant.   .   .   .   Hence whether the damages recov-
ered, if two actions are given, may to some trifling extent
be double, or whether the same injury sometimes gives two
independent legal rights of recovery, throws very little light
upon the intention of the legislature in passing the act of
1849 [the survival statute].   A wrongful injury resulting in
the death of the person injured may work serious loss and
damage to him while living, and to his estate, and at the
same time deprive his widow and next of kin of what he
would have earned and saved but for the injury."   There
is nothing new in the decision.   It is in perfect harmony
with *Needham v. G. T. R. Co.*, which, instead of being con-
sidered overruled, should be considered as affirmed; and so
it is considered by other courts that have reviewed the sub-

ject. The case is referred to by RAPALLO, J., in *Littlewood v. New York*, 89 N. Y. 24, as being the necessary result of a situation where there is a statute reviving the cause of action of the injured person in favor of his estate, and a statute conferring a cause of action upon his surviving relatives.

A word is required in regard to *Hurst v. Detroit City R'y*, 84 Mich. 539, wherein it is said that the cause of action which survives is a separate thing from the new cause of action given to surviving relatives under the statute. Counsel quotes the language of Justice LONG in that case, and follows with the observation that it needs no argument to show that it is pure *obiter*. The miscalled *obiter* states one of the principal reasons given by the court for the conclusion finally reached, and is by no means *obiter* within the proper significance of the term, as we have before remarked. Instead of the later case of *Sweetland v. C. & G. T. R. Co.* (Mich.), 75 N. W. Rep. 1066, to which our attention was earnestly invited, changing the rule of the *Hurst Case*, it stands as a clear affirmance of it. The two cases, together, are very much in the situation of the two Vermont cases. If the first, by itself, is not to be regarded as a clear adjudication upon the point under discussion, it should be so regarded in connection with the affirmance of the principle in the later case. True, Justice LONG, Justice GRANT concurring, said that the language of his former opinion was *obiter*, but it was not such within the rule stated in this opinion, and was not so considered by a majority of the Michigan court. The opinion of the court, given by Mr. Justice GRANT, is to the effect that no cause of action accrued to the injured person in the absence of conscious existence after the injury; that there was no evidence warranting a finding that there was such conscious existence; hence the recovery of damages to the deceased was reversed. Justice MONTGOMERY dissented because, in his judgment, the question of

conscious existence was for the jury on the evidence. Justice Hooker dissented because, in his judgment, life after the injury was all that was necessary to a survival of the cause of action. On the whole, how anything can be seen in the case to weaken what was said in the *Hurst Case* is not understood. True, the court was divided on the question, but the majority of the justices held to the doctrine that the cause of action of the injured person is not lost by his death. That seems plain beyond reasonable controversy.

We now come to a suggestion that this court has expressly decided that in case of .death. from actionable negligence no cause of action survives. At this point the signification of the term "*obiter dictum*" suddenly changes, as it seems. Formerly everything was included not necessary to the conclusion reached, but when *Ean v. C., M. & St. P. R. Co.* 95 Wis. 69, is. reached, an observation regarding the subject beyond the case,— something far less entitled to weight than those mere general expressions based on correct premises but beyond the case, covered by the maxim to which Chief Justice Marshall alluded in *Cohens v. Virginia,* 6 Wheat. 264, to which counsel referred in the opening, as the test to be applied to the authorities cited by this court, a statement made in passing regarding an outside and not even collateral topic, the purest kind of *obiter* and worse, because the premises upon which it was based omitted the change in the statute regarding the revival of actions, which varied the whole situation, and had not theretofore been passed upon by this court as affecting negligent injuries,— is cited to us as the deliberate judgment of the court on the very point covered by the observation. The question was, If death happened to an employee from the negligence of a co-employee under such circumstances that, had death not ensued, he would have had, by statute, a cause of action against the common employer to recover damages for his injury, may surviving relatives recover their loss under sec. 4255? That

was the sole question considered and decided.    Sec. 4253, as
it now exists, was not thought of, nor was it in any way in-
volved, even collaterally.    In making the observation, de-
cisions were in mind made before the change in the statute
in regard to the survival of causes of action for injuries to
the person.    All that is so obvious, even by a casual reading.
of the case, that it is not seen why it was cited to our atten-
tion as authority, especially in view of *Lehmann v. Farwell*,
subsequently decided, where the survival statute was fully
considered and it was said that it covered every cause of
action for a bodily injury based on actionable negligence,
and in view of the further fact that we have heretofore said
in this case that the court decided that way in the *Lehmann
Case*, and that it rules here.    There are many cases where a
contention regarding what has been decided is justifiable,
but when once made and considered, and the court deliber-
ately passes judgment as to what it before decided, that at
least should set the matter at rest.

There are some references, made in the argument for a re-
hearing, to statutes of other states and decisions under them.
That field was covered in the former opinion.    It was recog-
nized that those decisions, and some others, are in conflict
with our conclusions.    No reason is perceived why that can
have any greater weight now than before, or why we should
again consider them.

We have now referred point by point to every suggestion
found in the argument in support of the motion for a re-
hearing, and have treated anew those considered of impor-
tance, with as much care as if the subject were before us
for the first time.    Notwithstanding the result reached is the
same as before, the motion and this opinion upon it will add
strength and stability to the judicial declaration of the law
originally made.    The labor of counsel for respondent has
not been without good results.    It has placed before us all
suggestions, liable to occur to members of the profession,

why a different result should have been reached. . The court has been enabled thereby to consider such suggestions and pass upon them as a part of this case, instead of their being left for consideration in future cases. That adds to the authority of a decision, and may rightly be considered fortunate.

To recapitulate why the motion for a rehearing should be denied, notwithstanding the reasons urged to the contrary:

(1) The statute (sec. 4253) we were called upon to construe is too plain to admit of any other construction than that which the ordinary meaning of the words suggests.

(2) The statute is not open to construction in this case, because the subject was fully covered in *Lehmann v. Farwell*.

(3) The suggestion that the maxim "*Noscitur a sociis*" should be applied to the statute cannot be adopted, because a rule for construction is not applicable where there is no use for construction.

(4) The contention that the illustration used in the former opinion, to make apparent the false theory drawn by some courts from the English decisions, is illogical and involved a *non sequitur*, is based on a misconception of the premises on which the conclusion was based.

(5) The contention that language in judicial opinions, cited in support of the decision, are *obiter* expressions, is based on a misconception of the cases where such opinions were given, and what is properly considered *obiter* in a judicial decision.

(6) The assumed conflict in English decisions as to the character of Lord Campbell's act, is not there when they are viewed from the situations of the judges who delivered the opinions.

(7) If the conflict mentioned does exist, that does not change the situation where the legislative purpose is plain to preserve the cause of action of the injured person without prejudice to the cause of action to surviving relatives.

(8) The imagined menace of a double recovery in the sit-

uation as we find it, does not exist in fact, as the damages in one right are limited to the loss which accrues to the injured person before death, and the damages in the other to the pecuniary loss of surviving relatives, as before the survival statute. The two rights in no way overlap each other. *By the Court.*— The motion for a rehearing is denied.