UNITED STATES *v.* R. F. DOWNING & Co. (No. 3222)[1]

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell,* special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[1] T. D. 43645.

[Oral argument October 11, 1929, by Mr. Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported a shipment of tweezers. These were about 4½ inches in length and are shown, by the record, to be designed and used as jewelers' tweezers. Some futile attempt was made to prove a commercial designation for the articles, but we think it fairly appears, not only from the testimony but from the documentary exhibits, that the exclusive use of these is by watchmakers in their work. The collector classified them under the specific provision in paragraph 354 of the Tariff Act of 1922, as "tweezers." The importer protested, claiming they were not so classifiable but were dutiable as manufactures of metal under paragraph 399 of said act. It was stipulated in the case that the merchandise "is composed of metal not plated with platinum, gold, or silver, and not covered with gilt lac."

The Customs Court sustained the protest and filed its opinion through Fischer, Chief Justice, in which the theory of appellee that the tweezers mentioned in said paragraph 354 must be tweezers such as were used for manicuring or pedicuring purposes was approved; in other words, that the doctrine of *noscitur a sociis* applies. The Government has appealed from the judgment of the Customs Court, and now claims here that the court below erred in applying the rule of *noscitur*. The relevant provisions of the statutes follow:

PAR. 354. Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this Act, which have folding or other than fixed blades or attachments, valued at not more than 40 cents per dozen, 1 cent each and 50 per centum ad valorem; * * * cuticle knives, corn knives, nail files, tweezers, hand forceps, and parts thereof, finished or unfinished, by whatever name known, 60 per centum ad valorem: * * *

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

It is contended by appellee that the judgment of the court below must be affirmed on the authority of *United States* v. *Kny-Scheerer Corp.*, T. D. 41670, which was affirmed in 14 Ct. Cust. Appls. 446, T. D. 42080. In that case surgical forceps were classified by the collector as "hand forceps" under said paragraph 354, on the theory that the expression "hand forceps" in said paragraph referred to forceps operated by hand. The Customs Court held that the rule of *noscitur a sociis* applied, and that, therefore, the said expression should

be construed to mean forceps used upon the hands. On appeal to this court the same claim was made by the importer. This court did not pass upon the claim of *noscitur*, but held that the forceps in question were more specifically provided for as surgical instruments in paragraph 359 of said act. That is all the court held in the case cited.

Here we have no competing provision which might be held to be more specific than the provision for "tweezers" in said paragraph 354. No tweezers of any kind are mentioned elsewhere, nor is there any provision for watchmakers' instruments, which might make the conditions similar to those confronting the court in *United States* v. *Kny-Scheerer, supra*. Here the question of the application of the rule of *noscitur* is fairly presented.

The rule of *noscitur a sociis*, it is known by its associates, is a rule of construction to be applied where there is doubt and ambiguity concerning the meaning of a word or expression used by the legislative body in enacting a statute. It can not be invoked where there is no doubt as to the meaning of the word or term used. *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280–283, T. D. 41886. This is equally true with the rule of *ejusdem generis*, which is sometimes confused with the *noscitur* rule. *United States* v. *Lilly & Co.*, 14 Ct. Cust. Appls. 332–340, T. D. 41970. An illuminating discussion of the rule of *noscitur a sociis* is found in *Brown* v. *Chicago*, etc., 78 N. W. 771, 102 Wis. 137, where Marshall, Judge, says:

The maxim "Noscitur a sociis" is not a rule of interpretation by which the meaning of one word or designation, or that of several such, used in close connection, governs in determining the meaning of other words or designations used in the same connection. You may know a person by the company he keeps. You may know the meaning of a term by its associates—what precedes and what follows it. When? Not in every case; but when not apparent from the language itself. It is a rule of construction to be resorted to where there is use for construction, not otherwise.

This being the law, what need have we here to call upon the rule of *noscitur* to aid in our construction of the meaning of the term "tweezers" used by Congress? The language is plain and unambiguous. Webster's New International Dictionary (1925) thus defines the word:

1. A small pincerlike implement for grasping or extracting.

The language being thus plain and unambiguous, we are not permitted to limit its meaning by a sort of judicial legislation; we would only be justified in restricting the term to tweezers used for manicuring or pedicuring purposes by a showing that, irrespective of the language used, the congressional intent was to so limit it. No such showing has been made here.

It is contended that the Summary of Tariff Information, 1921, furnished to the Congress when the Tariff Act of 1922 was being

prepared, contained this statement: "Cuticle knives, corn knives, nail files, tweezers, hand forceps, and parts thereof, are specially provided for." From this it is argued that the bill being passed in that form the congressional intent is apparent to include only manicure and pedicure tweezers. It is sufficient to say that if any restricted meaning is to be inferred from the quoted excerpt, the Summary of Tariff Information and other similar aids to construction are only to be adverted to when the meaning of the congressional language used is ambiguous and uncertain. *United States* v. *Stone & Downer*, 16 Ct. Cust. Appls. 82–87, T. D. 42732.

We can not legislate. If the Congress meant to restrict the meaning of the word "tweezers" in said paragraph 354, it might easily have done so. It is significant that in the other articles enumerated it did so; for instance, *cuticle* knives, *corn* knives, *nail* files, *hand* forceps. It did not say *hand* tweezers or *manicure* or *pedicure* tweezers, but simply "tweezers." This includes all tweezers, except such as are more specifically described as surgical instruments, or otherwise, and prevents the greater portion of such instruments from being relegated to the basket clause of manufactures of metal.

There might be room for the application of the doctrine of *noscitur a sociis* if some of the other articles specifically named in this statute were in question; as, for example, "corn knives" or "nail files." These expressions are capable of two meanings, and they are therefore ambiguous and uncertain. The court might well hold that the *noscitur* rule would apply in such cases and that the articles were to be restricted to knives and files used in manicuring or pedicuring. But for us to apply the rule in the case of "tweezers" would be akin to our construing the term "air rifles," as it appears in the toy paragraph of the Tariff Act of 1922, 1414, without any other considerations than the language of the paragraph itself, as applicable only to such air rifles as are used for toys.

The judgment of the customs court is *reversed*.